**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ANA ALBERTO, SABRENA ALVIN, KATHY
AMOR, BRUCE ANDERSEN, NICOLE
ANERINO, KEN ANNARUMMO, YVONNE
APELIAN, MARIA AVDELAS, VICTORIA
BALDWIN, TINA BALERIA, LORENE BANKS,
SANDRA BARTHOLOMEW, PANDORA
BATTLES, ROBBIN BAZINET, VHENUS
BELISLE, CATHERINE BENEFIELD, TANYA
BERG, KELLI BICE, SCOTT BLANCHARD,
EILEEN BONFIGLIO, MARTIN BOOS, VICKIE
BOSCH, PENNY BOWERS, LASHREE
BRANCH, PAULA BREWER, ANGEL BROWN,
DONALD BROWN, LISA BROWN, BARBARA
BRUSHETT, SHEREE BRYANT, BRANDON
BULGER, KIMBERLY BURGESS, JOHN
BURKETT, KRYSTEN BUSH, ELIZABETH
BUTEAU, JOHN BYRNS, STACEY CALCOTE,
DEBRA CANNATA, FREDDY G. CARR, MARY
M. CARR, VICKI CARTY, SAUL CERVANTES,
JANA CHEHOURI, WESLEY CHUNG-A-ON,
DEBORAH CIFERNI, RHONDA CLARK,
TERRY CLOUTIER, SHIRLEY CONTRERAS,
DAVID COSTELLO, KENYATTA COTTON,
KEITH CRAWFORD, CHANDA CULLEY,
ROBERT DAVENPORRT, JONATHAN DAVIS,
LASHANTA DAVIS, PEGGY DAVIS, DARLENE
DELANEY, DION DELGADO, BENJAMIN
DEVINE, DONNA DILLON, JERELS DILLON,
JESSICA DONOVAN, MICHAEL DONOVAN,
LULA DRAPER, SARAH ECTON, LORETTA
EDDIE, JEANNE EMMERMAN, ULYSSES
ESPARZA, DIANE ETHRIDGE, JAMIE EYLER,
FRANK FAVAZZA, MICHAEL FAY,
SAMANTHA FERGUSON, JOAN FIELDS,
BOBBI FINCH, KIMBRA FLANDERS, BLAIR
FLEITES, PATSY FLINN, BEATRICE
FRIEDMAN PINONES, COURTNEY FRIEND,
MARITZA GALINDO, LYNN GIBBS, COLIN
GRANGER, KEITH GREN, CARMA GRUHLKE,
NORMAN GUINN, KATHLEEN HALL, SALLY
HALL, BRINITHA HARRIS, KEVIN HARRIS,
STEPHANIE HARRISON, DESIREE HASSAN,

Case No.

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

MARC HAUGHABOO, ROBERT HAVILAND,
DARCY HEIDT, STEVE HEMPHILL, JANIS
HENDERSON, ANTHONY HEYSQUIERDO,
IASHA HILL, SANDRA HINES-
CUMBERLEDGE, ROBYN HODNETT, ROBERT
HODSDON, TIMOTHY HOLDEN, JESSIE
HOLLISTER, SHARON HOPKINS, HEIDI
HORNE, DAVID HOWARD, RANDEL HUFF,
ALEXANDER HUTCHINS, LINDA JARVIS,
DAVID JOHNSON, ANDREA JONES, ANYA
JONES, DEBORAH JONES, TIM JONES,
VINCENT JONES, JUDY JOYNER,
MICHELENE JUDD, RUSSELL KANE,
LINDSEY KANG, JASON KARR, ALLISON
KAY, KEVIN KELLY, JANY KIM, MARLA
KING, SHAWN KING, LINDA KINNARD,
KATHY KLAASSEN, BETTY KLEIN, VICKI
KLEIN, FAYE KNIGHTEN, TJ KNOWLAND,
KAREN KOLB, TERESA KRAGE, MATTHEW
KRAUSE, JAMES LAMBERT, ROSEMARY
LANCTOT, DIANA LAROSA, LORI
LAWHEAD, LYNETTE LAWRENCE-KIRK,
TAMMY LECHNER, DANA LEWIS,
FRANCESCA LOGAN, REBECCA LOVEJOY,
DAVID LOVELL, DONALD LYNCH, ENRIQUE
MANCIA, SARAH ANGRICH, LATONYA
MARK, MICHAEL MARKIEWICZ, KELLY
MATTHEWS, TANYA MATTHEWS, STACEY
MAYES, KENNETH MCGLOTHEN, YOLONDA
MCGREGOR, CHERYL MCMURRAY, JULIA
MEDINA, MARIA MENDEZ, GIUSEPPE
MEROLLA, SYLVIA MILLER, AMANDA
MONITA, DAVE MOODY, ERICA MORENO,
MORGAN MOSIER, BRENDA MYERS,
JENNIFER NAEVE, ROBERT NEVE, LINDA
NIDAY, STEVEN OAKLEY, LIZ O'CONNELL,
ALEXANDER PATTERSON, JEFF PEDERSEN,
LILLY PEREZ, KHANH PHAM, ALEX
PONDER, ALICE POOLE, RADA POPOVA,
ROBIN PREBE, ROSALINDA QUINTERO,
ANGELENA RAINES, ROMONA REED, ELIZA
REID, SARA RHOTEN, BILLIE RICE,
LEKENDRA RICHARDSON, CHERYL RIENER,
ROBERT RIORDAN, KAREN ROACH,
VANESSA ROBERTS, ANTHONY
RODRIGUEZ, KAREN ROHRMAN, MICHAEL
ROJAS JR., CARRIE ROMAN, LORI ROOT,
TAAKENA ROSS, LUIS RUIZ, DEBRA
RUSSELL, MONIQUE SALERNO,

DOUG SANNAN, MELISSA SATURNO, ELYSSA SCHNEIDER, CAROL SCHUPP, TIFFANY SCOTT, KAREN SENOUR, ERICA SETERSTROM, AMANDA SHARKEY, SHARON SHIBLEY, SAMARA SHOFNER, CHUCK SILVEIRA, ANDREA SMITH, JEFF SNYDER, TAMMY SNYDER, WILLIAM SPILLERS, KAREN STANFIELD, LISA STEINBERG, HEATHER STEWART, DONNA STORDAHL, JENNIFER STOREMSKI, SHELDON STURGES, BRENDA SUMMERS, THERESA TERHARK, VERONICA THOMAS-KOWALAK, ERIK TIPTON, STEVEN TISH, TERESA TOLNAY, DEMETRIOS TSIPTSIS, TED TURNBOUGH, LUANN TYBORSKI, KRISTINE VALENTI, KAYLA VANWINSEN, KRISTINA VAUGHN, LETONYA VAUGHN, TAMARA VINCENT, JOANNA VIOLA, CANDACE WALLACE, BAILEE WALSH, LAURA WAS, ELIZABETH WATSON, DANYA WEDEMIER, SUZANNE WELCH, DEBRA WELLS, JOANI WERNER, DIANE WHITAKER, DEANNA WILLIAMS, GINA WIMSATT, WOODSON WOOD JR, RACHELLE WYSE, JOHN YOO, ROBERT YOUNGER, BETTY ZAMBRANO, and MICHAEL ZINZER, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

HILL'S PET NUTRITION, INC.,

      Defendant.

---

Plaintiffs[1] bring this action, on behalf of themselves and all others similarly situated,

against Hill's Pet Nutrition, Inc. ("Hill's" or "Defendant") and allege as follows:

## FACTUAL ALLEGATIONS

---

[1] Plaintiffs refer to the individuals referenced in the caption above and described more fully in paragraphs 30 to 279 below.

1.    Defendant, sells pet food for dogs and has worked to build a premium brand specifically targeted at ingredient-conscious pet owners.

2.    Founded in 1939, Defendant claims to "make nutrition a cornerstone of veterinary medicine." Defendant sells its products through veterinary clinics (including those with on-line stores) and in leading national pet specialty chains, including PetSmart and Petco as well as online through vendors such as Amazon.

3.    Veterinarians usually prescribe the Science Diet and Prescription Diet product lines to address nutritional deficiencies and health issues. Therefore, the premium ingredients present in these pet foods are an important characteristic to consumers, including the Plaintiffs and Class Members.

4.    At issue in this action are certain sizes and varieties of two pet food product lines: "Science Diet" and "Prescription Diet" (collectively "Hill's Products").[2]

---

[2] The products that are part of the Hill's Pet Nutrition dog food recall include the following canned dog food products (Plaintiffs reserve the right to amend this list of affected products covered by this litigation as necessary):

• Hill's Prescription Diet c/d Multicare Canine Chicken & Vegetable Stew 12.5 oz.
• Hill's Prescription Diet i/d Canine Chicken & Vegetable Stew 12.5 oz.
• Hill's Prescription Diet i/d Canine Chicken & Vegetable Stew 5.5 oz.
• Hill's Prescription Diet z/d Canine 5.5 oz.
• Hill's Prescription Diet g/d Canine 13 oz.
• Hill's Prescription Diet i/d Canine 13 oz.
• Hill's Prescription Diet j/d Canine 13 oz.
• Hill's Prescription Diet k/d Canine 13 oz.
• Hill's Prescription Diet w/d Canine 13 oz.
• Hill's Prescription Diet z/d Canine 13 oz.
• Hill's Prescription Diet Metabolic + Mobility Canine Vegetable & Tuna Stew 12.5 oz.
• Hill's Prescription Diet w/d Canine Vegetable & Chicken Stew 12.5 oz.
• Hill's Prescription Diet i/d Low Fat Canine Rice, Vegetable & Chicken Stew 12.5 oz.
• Hill's Prescription Diet Derm Defense Canine Chicken & Vegetable Stew 12.5 oz.
• Hill's Science Diet Adult 7+ Small & Toy Breed Chicken & Barley Entrée Dog Food 5.8 oz.
• Hill's Science Diet Puppy Chicken & Barley Entrée 13 oz.
• Hill's Science Diet Adult Chicken & Barley Entrée Dog Food 13 oz.
• Hill's Science Diet Adult Turkey & Barley Dog Food 13 oz.
• Hill's Science Diet Adult Chicken & Beef Entrée Dog Food 13 oz.
• Hill's Science Diet Adult Light with Liver Dog Food 13 oz.
• Hill's Science Diet Adult 7+ Chicken & Barley Entrée Dog Food 13 oz.
• Hill's Science Diet Adult 7+ Beef & Barley Entrée Dog Food 13 oz.
• Hill's Science Diet Adult 7+ Turkey & Barley Entrée 13 oz.

*Hill's Misrepresentations*

5.      In its advertising, marketing material and packaging, Defendant represents that Hill's Products provide "[n]utrition that can transform the lives of pets and comfort the pet parents and vets who care for them."[3]

6.      In order to better sell its Products, and to entice veterinarians to prescribe them, Defendant markets the Products as formulated and intended for dogs with specific needs or illnesses, such as: age-specific dietary needs, breed-specific dietary needs, digestive issues, heart issues, liver issues, or kidney issues.

7.      Defendant proudly declares that "We only accept ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's. Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."[4]

8.      Defendant goes on to state that "We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves. We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high quality standards, so your pet's food is produced under clean and sanitary conditions."[5]

9.      Further, Defendant declares that "We conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food. Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your

---

•Hill's Science Diet Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew Dog Food 12.5 oz.
•Hill's Science Diet Adult 7+ Youthful Vitality Chicken & Vegetable Stew Dog Food 12.5 oz.
https://www.hillspet.com/productlist?gclid=CjwKCAiA767jBRBqEiwAGdAOr98jryZUcUF6QfRg_53XY__88eysT
T6230JZpMAHvfUDhMi2G6akNRoCk6AQAvD_BwE&gclsrc=aw.ds (last visited Feb. 19, 2019).

[3] Hill's Pet Nutrition, Inc., *Dog Food*, https://www.hillspet.com/dog-food (last visited Feb. 19, 2019).
[4] Hill's Pet Nutrition, Inc., *Quality & Safety*, https://www.hillspet.com/about-us/quality-and-safety (last visited Feb. 19, 2019).
[5] *Id.*

5

pet gets a consistent product bag to bag."[6]

10.    Defendant clearly states that its products contain the "precise balance" of nutrients needed for a healthy dog: "Guided by science, we formulate our food with precise balance so your pet gets all the nutrients they need — and none they don't."[7]

11.    The packaging for the Products include claims that the Hill's Products "[s]upport[ ] a healthy immune system," "improve and lengthen quality of life," "can be used long-term," "[p]rotect[ ] vital kidney & heart function," "[s]upport your dog's natural ability to build lean muscle daily," and "meet[ ] the special nutritional needs of puppies and adult dogs."

12.    As demonstrated by the recall discussed below and the thousands of sickened and dead dogs who consumed Hill's Products, Defendant's representations about quality, ingredient supply, and product manufacturing and oversight are false.

**_The Recall_**

13.    On January 31, 2019, Defendant announced an initial recall of canned Prescription Diet and Science Diet products. Hill's issued a press release detailing the risk of excessive vitamin D consumption and identifying certain affected products.

14.    On February 7, 2019, Defendant announced an expansion of the recall to include additional SKU and lot numbers of canned Prescription Diet and Science diet products.

15.    Hill's claims the excessive vitamin D is "due to a supplier error."[8]

**_The Price Premium_**

16.    Defendant charges a premium price for its Products. As demonstrated by the

---

[6] _Id._
[7] Hill's Pet Nutrition, Inc., _Nutritional Philosophy_, https://www.hillspet.com/about-us/nutritional-philosophy (last visited Feb. 19, 2019).
[8] FDA, _Hill's Pet Nutrition Voluntarily Recalls Select Canned Dog Food for Excessive Vitamin D_, https://www.fda.gov/Safety/Recalls/ucm630232.htm (last updated Jan. 31, 2019).

below examples, the Hill's Products command a substantial premium over other dog food products:[9]

| Brand | Quantity | Price | Unit Price |
| --- | --- | --- | --- |
| Hill's Pres. Diet i/d Canine Chicken & Vegetable Stew 12.5 oz. | 12 cans | $39.99 | $3.33 per can $0.27 per ounce |
| Hill's Pres. Diet w/d Canine Vegetable & Chicken Stew 12.5 oz. | 12 cans | $38.99 | $3.25 per can $0.26 per ounce |
| Hill's Science Diet Adult Chicken & Barley Entrée Dog Food 13 oz. | 12 cans | $22.20 | $1.85 per can $0.14 per ounce |
| Hill's Science Diet Adult 7+ Beef & Barley Entrée Dog Food 13 oz. | 12 cans | $22.20 | $1.85 per can $0.14 per ounce |
| Purina ONE SmartBlend Classic Ground Beef and Brown Rice Adult 13 oz. | 12 cans | $12.67 | $1.06 per can $0.08 per ounce |
| Iams ProActive Health Adult Chicken and Whole Grain Rice Pate 13 oz. | 12 cans | $16.80 | $1.40 per can $0.11 per ounce |
| Nature's Recipe Easy-to-Digest Chicken, Rice & Barley Recipe Cuts in Gravy Stew 13.2 oz. | 12 cans | $13.99 | $1.17 per can $0.09 per ounce |
| Purina Dog Chow High Protein Chicken Classic Ground Canned Dog Food 13 oz. | 12 cans | $12.60 | $1.05 per can $0.08 per ounce |

---

[9] Pricing information obtained from: Chewy, https://www.chewy.com (last visited Feb. 15, 2019).

17.     The presence of toxic levels of vitamin D in the Products leading to a high probability of endangering the health of the dogs and ultimately resulting in many sick and dead dogs indicates that the Hill's Products' value to the consumers is diminished, and consequently, the Products are worth substantially less than the premium prices paid for them

18.     As a result of Defendant's misrepresentations, deceptive conduct and unfair practices, Plaintiffs and class members suffered actual damages and economic losses because they overpaid for the Hill's Products not knowing that the Hill's Products had an adverse effect on their pets' health.

19.     Consumers are willing to pay a premium for Defendant's Products because these foods are represented to be specifically formulated for the particular health needs of dogs and to meet certain ingredient supply, quality, and manufacturing standards. In its advertising, marketing material and packaging, Defendant represents, among other things, that Hill's Products provide "[n]utrition that can transform the lives of pets and comfort the pet parents and vets who care for them."[10]

20.     Instead, consumers paid a premium for a product that sickened or killed thousands of dogs. And, all Class Members despite having paid a premium price for supposedly healthy dog food marketed to be specifically formulated to address certain health concerns and to meet certain ingredient supply, quality, and manufacturing standards, did not receive what they paid for. Pet owners purchased the Hill's Products and paid the pricing premium because of the positive benefits to their dog's health, as claimed by Defendant. Instead of receiving this positive health benefits, these consumers were subject to expensive veterinary bills and related costs as they tried to address the illnesses caused by the excessive vitamin D levels in the Hill's Products.

---

[10] Hill's Pet Nutrition, Inc., *Dog Food*, *supra* note 3.

21.    As a result of Defendant's deceptive conduct and/or unfair practices, Plaintiffs and Class Members suffered actual damages and/or economic losses.

*Additional Advertising and Marketing Misrepresentations*

22.    As described above and below, Defendant has engaged in an extensive, nationwide, uniform marketing and advertising campaign replete with misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines.

23.    Describing the quality of Hill's Products, Defendant's website[11] states a "commitment to quality" with more than 220 veterinarians, food scientists, technicians and Ph.D. nutritionists developing all of Hill's pet foods. Defendant also states that ingredients are accepted only from suppliers whose facilities meet stringent quality standards and who are approved by Defendant. Each ingredient is supposedly examined to ensure its safety.[12]

24.    Another component to Defendant's deceptive marketing and advertising campaign for its Prescription Diet product line is its alliance with veterinarians[13] which emphasizes a "unique position to find a solution" to dietary and health issues that dogs may face.

25.    Additionally, Defendant claims that its Science Diet product line would feed "your dog's best life" with biology based nutrition.[14]

*Defendant's Misrepresentations and Omissions are Material to Consumers*

26.    Although pet foods vary in the quality of ingredients, formula, manufacturing processes and inspection quality, and nutritional value, premium or ultra-premium pet foods, like

---

[11] Hill's Pet Nutrition, Inc. *Quality and Safety*, *supra* note 4.
[12] *Id*.
[13] Hill's Pet Nutrition, Inc., *Dog Food*, *supra* note 3, 10.
[14] Hill's Pet Nutrition, Inc., *Lifelong Health Starts with Science*, https://www.hillspet.com/science-diet/dog-food (last visited Feb.12, 2019).

Hill's Products, typically have higher standards with respect to each of these important variables.

27.    Hill's Pet Nutrition Prescription Diet and Science Diet product lines are typically sold through a veterinarian's office and provide tailored nutritional care to help with conditions including obesity, digestive problems, skin sensitivities, kidney problems, aging joints, diabetes, liver problems, heart health, and more.

28.    Hill's Products emphasize nutritional value for the dogs consuming them. Pet owners generally buy them to address a health issue or nutritional deficiency that their dog may be experiencing – and pay a premium price to do so.

29.    Accordingly, Defendant's ultra-premium pet foods are higher priced with larger mark-ups.

## PARTIES

30.    Plaintiff Ana Alberto is a citizen of California and resides in Northridge, California. At various times within the Relevant Time Period (defined below), Plaintiff Alberto, purchased Hill's products. Consumption of the product, by Alberto's pet, resulted in illness and death of the animal.

31.    Plaintiff Sabrena Alvin is a citizen of Georgia and resides in Atlanta, Georgia. At various times within the Relevant Time Period (defined below), Plaintiff Alvin, purchased Hill's products. Consumption of the product, by Alvin's pet, resulted in illness and death of the animal.

32.    Plaintiff Kathy Amor is a citizen of Florida and resides in Jacksonville, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Amor, purchased Hill's products. Consumption of the product, by Amor's pet, resulted in illness of the animal.

33.    Plaintiff Bruce Andersen is a citizen of California and resides in Marysville, California. At various times within the Relevant Time Period (defined below), Plaintiff Andersen, purchased Hill's products. Consumption of the product, by Andersen's pet, resulted in illness and

death of the animal.

34.    Plaintiff Nicole Anerino is a citizen of Pennsylvania and resides in Feasterville Trevose, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Anerino, purchased Hill's products. Consumption of the product, by Anerino's pet, resulted in illness of the animal.

35.    Plaintiff Ken Annarummo is a citizen of Massachusetts and resides in Rehoboth, Massachusetts. At various times within the Relevant Time Period (defined below), Plaintiff Annarummo, purchased Hill's products. Consumption of the product, by Annarummo's pet, resulted in illness and death of the animal.

36.    Plaintiff Yvonne Apelian is a citizen of California and resides in Sherman Oaks, California. At various times within the Relevant Time Period (defined below), Plaintiff Apelian, purchased Hill's products. Consumption of the product, by Apelian's pet, resulted in illness of the animal.

37.    Plaintiff Maria Avdelas is a citizen of Ohio and resides in Cantoin, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Avdelas, purchased Hill's products.

38.    Plaintiff Victoria Baldwin is a citizen of California and resides in Dana Point, California. At various times within the Relevant Time Period (defined below), Plaintiff Baldwin, purchased Hill's products. Consumption of the product, by Baldwin's pet, resulted in illness of the animal.

39.    Plaintiff Tina Baleria is a citizen of California and resides in Morgan Hill, California. At various times within the Relevant Time Period (defined below), Plaintiff Baleria, purchased Hill's products. Consumption of the product, by Baleria's pet, resulted in illness of the animal.

40.     Plaintiff Lorene Banks is a citizen of California and resides in San Leandro, California. At various times within the Relevant Time Period (defined below), Plaintiff Banks, purchased Hill's products. Consumption of the product, by Banks's pet, resulted in illness of the animal.

41.     Plaintiff Sandra Bartholomew is a citizen of Florida and resides in Orlando, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Bartholomew, purchased Hill's products. Consumption of the product, by Bartholomew's pet, resulted in illness of the animal.

42.     Plaintiff Pandora Battles is a citizen of Alabama and resides in Attalla, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Battles, purchased Hill's products. Consumption of the product, by Battles's pet, resulted in illness and death of the animal.

43.     Plaintiff Robbin Bazinet is a citizen of Arkansas and resides in Malvern, Arkansas. At various times within the Relevant Time Period (defined below), Plaintiff Bazinet, purchased Hill's products. Consumption of the product, by Bazinet's pet, resulted in illness of the animal.

44.     Plaintiff Vhenus Belisle is a citizen of California and resides in Los Alamitos, California. At various times within the Relevant Time Period (defined below), Plaintiff Belisle, purchased Hill's products. Consumption of the product, by Belisle's pet, resulted in illness of the animal.

45.     Plaintiff Catherine Benefield is a citizen of Louisiana and resides in Baton Rouge, Louisiana. At various times within the Relevant Time Period (defined below), Plaintiff Benefield, purchased Hill's products. Consumption of the product, by Benefield's pet, resulted in illness and death of the animal.

46.     Plaintiff Tanya Berg is a citizen of Florida and resides in Fort Myers, Florida. At

various times within the Relevant Time Period (defined below), Plaintiff Berg, purchased Hill's products. Consumption of the product, by Berg's pet, resulted in illness of the animal.

47.     Plaintiff Kelli Bice is a citizen of Alabama and resides in Goshen, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Bice, purchased Hill's products. Consumption of the product, by Bice's pet, resulted in illness and death of the animal.

48.     Plaintiff Scott Blanchard is a citizen of Maine and resides in Cape Neddick, Maine. At various times within the Relevant Time Period (defined below), Plaintiff Blanchard, purchased Hill's products. Consumption of the product, by Blanchard's pet, resulted in illness and death of the animal.

49.     Plaintiff Eileen Bonfiglio is a citizen of Florida and resides in Brandon, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Bonfiglio, purchased Hill's products. Consumption of the product, by Bonfiglio's pet, resulted in illness of the animal.

50.     Plaintiff Martin Boos is a citizen of Michigan and resides in Milford, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Boos, purchased Hill's products. Consumption of the product, by Boos' pet, resulted in illness of the animal.

51.     Plaintiff Vickie Bosch is a citizen of California and resides in San Diego, California. At various times within the Relevant Time Period (defined below), Plaintiff Bosch, purchased Hill's products. Consumption of the product, by Bosch's pet, resulted in illness and death of the animal.

52.     Plaintiff Penny Bowers is a citizen of Illinois and resides in Aurora, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Bowers, purchased Hill's products.

53.     Plaintiff Lashree Branch is a citizen of Indiana and resides in Highland, Indiana. At various times within the Relevant Time Period (defined below), Plaintiff Branch, purchased Hill's

products. Consumption of the product, by Branch's pet, resulted in illness of the animal.

54.     Plaintiff Paula Brewer is a citizen of Arkansas and resides in Kensett, Arkansas. At various times within the Relevant Time Period (defined below), Plaintiff Brewer, purchased Hill's products. Consumption of the product, by Brewer's pet, resulted in illness of the animal.

55.     Plaintiff Angel Brown is a citizen of Virginia and resides in Hampton, Virginia. At various times within the Relevant Time Period (defined below), Plaintiff Brown, purchased Hill's products. Consumption of the product, by Brown's pet, resulted in illness of the animal.

56.     Plaintiff Donald Brown is a citizen of Texas and resides in Caldwell, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Brown, purchased Hill's products. Consumption of the product, by Brown's pet, resulted in illness and death of the animal.

57.     Plaintiff Lisa Brown is a citizen of Texas and resides in Desoto, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Brown, purchased Hill's products. Consumption of the product, by Brown's pet, resulted in illness of the animal.

58.     Plaintiff Barbara Brushett is a citizen of Rhode Island and resides in Newport East, Rhode Island. At various times within the Relevant Time Period (defined below), Plaintiff Brushett, purchased Hill's products. Consumption of the product, by Brushett's pet, resulted in illness and death of the animal.

59.     Plaintiff Sheree Bryant is a citizen of North Carolina and resides in Fayetteville, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Bryant, purchased Hill's products. Consumption of the product, by Bryant's pet, resulted in illness and death of the animal.

60.     Plaintiff Brandon Bulger is a citizen of Ohio and resides in Fremont, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Bulger, purchased Hill's products.

61.     Plaintiff Kimberly Burgess is a citizen of West Virginia and resides in Danville, West Virginia. At various times within the Relevant Time Period (defined below), Plaintiff Burgess, purchased Hill's products. Consumption of the product, by Burgess' pet, resulted in illness and death of the animal.

62.     Plaintiff John Burkett is a citizen of Ohio and resides in Huber Heights, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Burkett, purchased Hill's products.

63.     Plaintiff Krysten Bush is a citizen of Georgia and resides in Canton, Georgia. At various times within the Relevant Time Period (defined below), Plaintiff Bush, purchased Hill's products. Consumption of the product, by Bush's pet, resulted in illness and death of the animal.

64.     Plaintiff Elizabeth Buteau is a citizen of New York and resides in Wolcott, New York. At various times within the Relevant Time Period (defined below), Plaintiff Buteau, purchased Hill's products. Consumption of the product, by Buteau's pet, resulted in illness of the animal.

65.     Plaintiff John Byrns is a citizen of California and resides in Anaheim, California. At various times within the Relevant Time Period (defined below), Plaintiff Byrns, purchased Hill's products. Consumption of the product, by Byrns' pet, resulted in illness of the animal.

66.     Plaintiff Stacey Calcote is a citizen of Kentucky and resides in Scottsville, Kentucky. At various times within the Relevant Time Period (defined below), Plaintiff Calcote, purchased Hill's products.

67.     Plaintiff Debra Cannata is a citizen of Massachusetts and resides in Dorchester, Massachusetts. At various times within the Relevant Time Period (defined below), Plaintiff Cannata, purchased Hill's products. Consumption of the product, by Cannata's pet, resulted in illness and death of the animal.

68. Plaintiff Freddy G. Carr is a citizen of Tennessee and resides in Nashville, Tennessee. At various times within the Relevant Time Period (defined below), Plaintiff Carr, purchased Hill's products. Consumption of the product, by Carr's pet, resulted in illness and death of the animal.

69. Plaintiff Mary M. Carr is a citizen of Tennessee and resides in Nashville, Tennessee. At various times within the Relevant Time Period (defined below), Plaintiff Carr, purchased Hill's products. Consumption of the product, by Carr's pet, resulted in illness and death of the animal.

70. Plaintiff Vicki Carty is a citizen of Kansas and resides in Kansas City, Kansas. At various times within the Relevant Time Period (defined below), Plaintiff Carty, purchased Hill's products. Consumption of the product, by Carty's pet, resulted in illness of the animal.

71. Plaintiff Saul Cervantes is a citizen of Nevada and resides in Las Vegas, Nevada. At various times within the Relevant Time Period (defined below), Plaintiff Cervantes, purchased Hill's products. Consumption of the product, by Cervantes' pet, resulted in illness of the animal.

72. Plaintiff Jana Chehouri is a citizen of Pennsylvania and resides in Allentown, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Chehouri, purchased Hill's products.

73. Plaintiff Wesley Chung-A-On is a citizen of Florida and resides in Sunrise, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Chung-A-On, purchased Hill's products. Consumption of the product, by Chung-A-On's pet, resulted in illness of the animal.

74. Plaintiff Deborah Ciferni is a citizen of Texas and resides in Weatherford, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Ciferni, purchased Hill's products. Consumption of the product, by Ciferni's pet, resulted in illness of the animal.

75. Plaintiff Rhonda Clark is a citizen of Oklahoma and resides in Sayre, Oklahoma.

At various times within the Relevant Time Period (defined below), Plaintiff Clark, purchased Hill's products. Consumption of the product, by Clark's pet, resulted in illness of the animal.

76.    Plaintiff Terry Cloutier is a citizen of Kansas and resides in Ottawa, Kansas. At various times within the Relevant Time Period (defined below), Plaintiff Cloutier, purchased Hill's products. Consumption of the product, by Cloutier's pet, resulted in illness of the animal.

77.    Plaintiff Shirley Contreras is a citizen of Arkansas and resides in Pocahontas, Arkansas. At various times within the Relevant Time Period (defined below), Plaintiff Contreras, purchased Hill's products. Consumption of the product, by Contreras' pet, resulted in illness and death of the animal.

78.    Plaintiff David Costello is a citizen of New Jersey and resides in Toms River, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Costello, purchased Hill's products. Consumption of the product, by Costello's pet, resulted in illness of the animal.

79.    Plaintiff Kenyatta Cotton is a citizen of Mississippi and resides in Petal, Mississippi. At various times within the Relevant Time Period (defined below), Plaintiff Cotton, purchased Hill's products. Consumption of the product, by Cotton's pet, resulted in illness of the animal.

80.    Plaintiff Keith Crawford is a citizen of Alabama and resides in Mount Olive, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Crawford, purchased Hill's products.

81.    Plaintiff Chanda Culley is a citizen of Mississippi and resides in Jackson, Mississippi. At various times within the Relevant Time Period (defined below), Plaintiff Culley, purchased Hill's products. Consumption of the product, by Culley's pet, resulted in illness and death of the animal.

82.    Plaintiff Robert Davenporrt is a citizen of Georgia and resides in Fortson, Georgia.

At various times within the Relevant Time Period (defined below), Plaintiff Davenporrt, purchased Hill's products. Consumption of the product, by Davenporrt's pet, resulted in illness of the animal.

83.     Plaintiff Jonathan Davis is a citizen of Pennsylvania and resides in E Stroudsburg, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Davis, purchased Hill's products. Consumption of the product, by Davis's pet, resulted in illness of the animal.

84.     Plaintiff Lashanta Davis is a citizen of Illinois and resides in Warrenville, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Davis, purchased Hill's products. Consumption of the product, by Davis's pet, resulted in illness of the animal.

85.     Plaintiff Peggy Davis is a citizen of Illinois and resides in Chicago, Illinois, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Davis, purchased Hill's products. Consumption of the product, by Davis's pet, resulted in illness of the animal.

86.     Plaintiff Darlene Delaney is a citizen of Ohio and resides in Marion, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Delaney, purchased Hill's products.

87.     Plaintiff Dion Delgado is a citizen of New York and resides in Bronx, New York. At various times within the Relevant Time Period (defined below), Plaintiff Delgado, purchased Hill's products. Consumption of the product, by Delgado's pet, resulted in illness of the animal.

88.     Plaintiff Benjamin Devine is a citizen of Pennsylvania and resides in Mechanicsburg, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Devine, purchased Hill's products. Consumption of the product, by Devine's pet, resulted in illness and death of the animal.

89.     Plaintiff Donna Dillon is a citizen of North Carolina and resides in Charlotte, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Dillon,

purchased Hill's products. Consumption of the product, by Dillon's pet, resulted in illness of the animal.

90.     Plaintiff Jerels Dillon is a citizen of Michigan and resides in Woodhaven, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Dillon, purchased Hill's products. Consumption of the product, by Dillon's pet, resulted in illness of the animal.

91.     Plaintiff Jessica Donovan is a citizen of Illinois and resides in Belleville, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Donovan, purchased Hill's products. Consumption of the product, by Donovan's pet, resulted in illness of the animal.

92.     Plaintiff Michael Donovan is a citizen of Illinois and resides in Springfield, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Donovan, purchased Hill's products. Consumption of the product, by Donovan's pet, resulted in illness and death of the animal.

93.     Plaintiff Lula Draper is a citizen of Mississippi and resides in Macon, Mississippi. At various times within the Relevant Time Period (defined below), Plaintiff Draper, purchased Hill's products. Consumption of the product, by Draper's pet, resulted in illness and death of the animal.

94.     Plaintiff Sarah Ecton is a citizen of New York and resides in Staten Island, New York. At various times within the Relevant Time Period (defined below), Plaintiff Ecton, purchased Hill's products. Consumption of the product, by Ecton's pet, resulted in illness of the animal.

95.     Plaintiff Loretta Eddie is a citizen of Alabama and resides in Toney, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Eddie, purchased Hill's products. Consumption of the product, by Eddie's pet, resulted in illness and death of the animal.

96.     Plaintiff Jeanne Emmerman is a citizen of Florida and resides in Boynton Beach,

Florida. At various times within the Relevant Time Period (defined below), Plaintiff Emmerman, purchased Hill's products. Consumption of the product, by Emmerman's pet, resulted in illness and death of the animal.

97.     Plaintiff Ulysses Esparza is a citizen of Illinois and resides in Waukegan, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Esparza, purchased Hill's products. Consumption of the product, by Esparza's pet, resulted in illness and death of the animal.

98.     Plaintiff Diane Ethridge is a citizen of Florida and resides in Oviedo, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Ethridge, purchased Hill's products. Consumption of the product, by Ethridge's pet, resulted in illness of the animal.

99.     Plaintiff Jamie Eyler is a citizen of Florida and resides in Pompano Beach, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Eyler, purchased Hill's products. Consumption of the product, by Eyler's pet, resulted in illness of the animal.

100.    Plaintiff Frank Favazza is a citizen of Missouri and resides in Saint Louis, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff Favazza, purchased Hill's products. Consumption of the product, by Favazza's pet, resulted in illness of the animal.

101.    Plaintiff Michael Fay is a citizen of Missouri and resides in Springfield, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff Fay, purchased Hill's products. Consumption of the product, by Fay's pet, resulted in illness of the animal.

102.    Plaintiff Samantha Ferguson is a citizen of Missouri and resides in Springfield, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff Ferguson, purchased Hill's products. Consumption of the product, by Ferguson's pet, resulted in illness and death of the animal.

103.    Plaintiff Joan Fields is a citizen of Maryland and resides in Catonsville, Maryland.

At various times within the Relevant Time Period (defined below), Plaintiff Fields, purchased Hill's products. Consumption of the product, by Fields's pet, resulted in illness and death of the animal.

104.    Plaintiff Bobbi Finch is a citizen of Indiana and resides in Clarksville, Indiana. At various times within the Relevant Time Period (defined below), Plaintiff Finch, purchased Hill's products. Consumption of the product, by Finch's pet, resulted in illness of the animal.

105.    Plaintiff Kimbra Flanders is a citizen of Utah and resides in Tooele, Utah. At various times within the Relevant Time Period (defined below), Plaintiff Flanders, purchased Hill's products. Consumption of the product, by Flanders' pet, resulted in illness of the animal.

106.    Plaintiff Blair Fleites is a citizen of Florida and resides in Cape Coral, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Fleites, purchased Hill's products. Consumption of the product, by Fleites's pet, resulted in illness and death of the animal.

107.    Plaintiff Patsy Flinn is a citizen of Texas and resides in Wylie, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Flinn, purchased Hill's products. Consumption of the product, by Flinn's pet, resulted in illness and death of the animal.

108.    Plaintiff Beatrice Friedman Pinones is a citizen of New Jersey and resides in Bergenfield, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Friedman Pinones, purchased Hill's products.

109.    Plaintiff Courtney Friend is a citizen of Indiana and resides in Sharpsville, Indiana. At various times within the Relevant Time Period (defined below), Plaintiff Friend, purchased Hill's products. Consumption of the product, by Friend's pet, resulted in illness of the animal.

110.    Plaintiff Maritza Galindo is a citizen of New Jersey and resides in Union, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Galindo, purchased Hill's products. Consumption of the product, by Galindo's pet, resulted in illness of the

animal.

111. Plaintiff Lynn Gibbs is a citizen of Florida and resides in Cape Coral, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Gibbs, purchased Hill's products.

112. Plaintiff Colin Granger is a citizen of California and resides in Chino Hills, California. At various times within the Relevant Time Period (defined below), Plaintiff Granger, purchased Hill's products. Consumption of the product, by Granger's pet, resulted in illness and death of the animal.

113. Plaintiff Keith Gren is a citizen of California and resides in North Hills, California. At various times within the Relevant Time Period (defined below), Plaintiff Gren, purchased Hill's products. Consumption of the product, by Gren's pet, resulted in illness of the animal.

114. Plaintiff Carma Gruhlke is a citizen of Arizona and resides in Scottsdale, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Gruhlke, purchased Hill's products. Consumption of the product, by Gruhlke's pet, resulted in illness of the animal.

115. Plaintiff Norman Guinn is a citizen of North Carolina and resides in Laurinburg, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Guinn, purchased Hill's products.

116. Plaintiff Kathleen Hall is a citizen of North Carolina and resides in Burnsville, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Hall, purchased Hill's products.

117. Plaintiff Sally Hall is a citizen of New York and resides in Gansevoort, New York. At various times within the Relevant Time Period (defined below), Plaintiff Hall, purchased Hill's products. Consumption of the product, by Hall's pet, resulted in illness and death of the animal.

118. Plaintiff Brinitha Harris is a citizen of California and resides in Palmdale,

22

California. At various times within the Relevant Time Period (defined below), Plaintiff Harris, purchased Hill's products.

119.    Plaintiff Kevin Harris is a citizen of Florida and resides in Jacksonville, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Harris, purchased Hill's products. Consumption of the product, by Harris' pet, resulted in illness and death of the animal.

120.    Plaintiff Stephanie Harrison is a citizen of Louisiana and resides in Calhoun, Louisiana. At various times within the Relevant Time Period (defined below), Plaintiff Harrison, purchased Hill's products. Consumption of the product, by Harrison's pet, resulted in illness of the animal.

121.    Plaintiff Desiree Hassan is a citizen of California and resides in Menifee, California. At various times within the Relevant Time Period (defined below), Plaintiff Hassan, purchased Hill's products. Consumption of the product, by Hassan's pet, resulted in illness of the animal.

122.    Plaintiff Marc Haughaboo is a citizen of Alaska and resides in Chugiak, Alaska. At various times within the Relevant Time Period (defined below), Plaintiff Haughaboo, purchased Hill's products.

123.    Plaintiff Robert Haviland is a citizen of Michigan and resides in Saint Clair Shores, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Haviland, purchased Hill's products. Consumption of the product, by Haviland's pet, resulted in illness of the animal.

124.    Plaintiff Darcy Heidt is a citizen of South Carolina and resides in Beaufort, South Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Heidt, purchased Hill's products. Consumption of the product, by Heidt's pet, resulted in illness and death of the animal.

125.    Plaintiff Steve Hemphill is a citizen of California and resides in Los Angeles,

California. At various times within the Relevant Time Period (defined below), Plaintiff Hemphill, purchased Hill's products. Consumption of the product, by Hemphill's pet, resulted in illness of the animal.

126.    Plaintiff Janis Henderson is a citizen of New Jersey and resides in Fanwood, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Henderson, purchased Hill's products. Consumption of the product, by Henderson's pet, resulted in illness of the animal.

127.    Plaintiff Anthony Heysquierdo is a citizen of Texas and resides in Houston, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Heysquierdo, purchased Hill's products. Consumption of the product, by Heysquierdo's pet, resulted in illness and death of the animal.

128.    Plaintiff Iasha Hill is a citizen of Massachusetts and resides in Quincy, Massachusetts. At various times within the Relevant Time Period (defined below), Plaintiff Hill, purchased Hill's products. Consumption of the product, by Hill's pet, resulted in illness of the animal.

129.    Plaintiff Sandra Hines-Cumberledge is a citizen of Connecticut and resides in Naugatuck, Connecticut. At various times within the Relevant Time Period (defined below), Plaintiff Hines-Cumberledge, purchased Hill's products.

130.    Plaintiff Robyn Hodnett is a citizen of Texas and resides in Aledo, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Hodnett, purchased Hill's products. Consumption of the product, by Hodnett's pet, resulted in illness and death of the animal.

131.    Plaintiff Robert Hodsdon is a citizen of California and resides in Petaluma, California. At various times within the Relevant Time Period (defined below), Plaintiff Hodsdon, purchased Hill's products. Consumption of the product, by Hodsdon's pet, resulted in illness of the

animal.

132.    Plaintiff Timothy Holden is a citizen of Texas and resides in San Antonio, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Holden, purchased Hill's products. Consumption of the product, by Holden's pet, resulted in illness of the animal.

133.    Plaintiff Jessie Hollister is a citizen of Colorado and resides in Louisville, Colorado. At various times within the Relevant Time Period (defined below), Plaintiff Hollister, purchased Hill's products. Consumption of the product, by Hollister's pet, resulted in illness and death of the animal.

134.    Plaintiff Sharon Hopkins is a citizen of Ohio and resides in Conneaut, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Hopkins, purchased Hill's products. Consumption of the product, by Hopkins' pet, resulted in illness of the animal.

135.    Plaintiff Heidi Horne is a citizen of Utah and resides in American Fork, Utah. At various times within the Relevant Time Period (defined below), Plaintiff Horne, purchased Hill's products. Consumption of the product, by Horne's pet, resulted in illness of the animal.

136.    Plaintiff David Howard is a citizen of Washington and resides in Orondo, Washington. At various times within the Relevant Time Period (defined below), Plaintiff Howard, purchased Hill's products. Consumption of the product, by Howard's pet, resulted in illness of the animal.

137.    Plaintiff Randel Huff is a citizen of Kentucky and resides in Glasgow, Kentucky. At various times within the Relevant Time Period (defined below), Plaintiff Huff, purchased Hill's products. Consumption of the product, by Huff's pet, resulted in illness and death of the animal.

138.    Plaintiff Alexander Hutchins is a citizen of New Mexico and resides in El Prado, New Mexico. At various times within the Relevant Time Period (defined below), Plaintiff Hutchins, purchased Hill's products. Consumption of the product, by Hutchins' pet, resulted in

illness of the animal.

139.    Plaintiff Linda Jarvis is a citizen of California and resides in Alameda, California. At various times within the Relevant Time Period (defined below), Plaintiff Jarvis, purchased Hill's products.

140.    Plaintiff David Johnson is a citizen of Ohio and resides in Stoutsville, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Johnson, purchased Hill's products. Consumption of the product, by Johnson's pet, resulted in illness and death of the animal.

141.    Plaintiff Andrea Jones is a citizen of Florida and resides in Pensacola, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Jones, purchased Hill's products. Consumption of the product, by Jones' pet, resulted in illness and death of the animal.

142.    Plaintiff Anya Jones is a citizen of South Carolina and resides in Columbia, South Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Jones, purchased Hill's products. Consumption of the product, by Jones' pet, resulted in illness and death of the animal.

143.    Plaintiff Deborah Jones is a citizen of Illinois and resides in University Park, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Jones, purchased Hill's products.

144.    Plaintiff Tim Jones is a citizen of Iowa and resides in Waukee, Iowa. At various times within the Relevant Time Period (defined below), Plaintiff Jones, purchased Hill's products.

145.    Plaintiff Vincent Jones is a citizen of South Carolina and resides in Hopkins, South Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Jones, purchased Hill's products. Consumption of the product, by Jones' pet, resulted in illness and death of the animal.

146.    Plaintiff Judy Joyner is a citizen of North Carolina and resides in Rocky Mount,

North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Joyner, purchased Hill's products. Consumption of the product, by Joyner's pet, resulted in illness of the animal.

147.    Plaintiff Michelene Judd is a citizen of New Hampshire and resides in Rochester, New Hampshire. At various times within the Relevant Time Period (defined below), Plaintiff Judd, purchased Hill's products. Consumption of the product, by Judd's pet, resulted in illness and death of the animal.

148.    Plaintiff Russell Kane is a citizen of New York and resides in Mineola, New York. At various times within the Relevant Time Period (defined below), Plaintiff Kane, purchased Hill's products. Consumption of the product, by Kane's pet, resulted in illness of the animal.

149.    Plaintiff Lindsey Kang is a citizen of Texas and resides in Houston, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Kang, purchased Hill's products. Consumption of the product, by Kang's pet, resulted in illness of the animal.

150.    Plaintiff Jason Karr is a citizen of Missouri and resides in St. Louis, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff Karr, purchased Hill's products.

151.    Plaintiff Allison Kay is a citizen of Alabama and resides in Birmingham, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Kay, purchased Hill's products. Consumption of the product, by Kay's pet, resulted in illness of the animal.

152.    Plaintiff Kevin Kelly is a citizen of New Jersey and resides in North Middletown, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Kelly, purchased Hill's products. Consumption of the product, by Kelly's pet, resulted in illness and death of the animal.

153.    Plaintiff Jany Kim is a citizen of California and resides in Corona, California. At

various times within the Relevant Time Period (defined below), Plaintiff Kim, purchased Hill's products. Consumption of the product, by Kim's pet, resulted in illness and death of the animal.

154.    Plaintiff Marla King is a citizen of Iowa and resides in Shellsburg, Iowa. At various times within the Relevant Time Period (defined below), Plaintiff King, purchased Hill's products. Consumption of the product, by King's pet, resulted in illness of the animal.

155.    Plaintiff Shawn King is a citizen of Mississippi and resides in Walnut, Mississippi. At various times within the Relevant Time Period (defined below), Plaintiff King, purchased Hill's products. Consumption of the product, by King's pet, resulted in illness of the animal.

156.    Plaintiff Linda Kinnard is a citizen of Texas and resides in Spring Branch, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Kinnard, purchased Hill's products. Consumption of the product, by Kinnard's pet, resulted in illness of the animal.

157.    Plaintiff Kathy Klaassen is a citizen of Michigan and resides in Hudson, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Klaassen, purchased Hill's products. Consumption of the product, by Klaassen's pet, resulted in illness and death of the animal.

158.    Plaintiff Betty Klein is a citizen of Indiana and resides in Brookville, Indiana. At various times within the Relevant Time Period (defined below), Plaintiff Klein, purchased Hill's products. Consumption of the product, by Klein's pet, resulted in illness of the animal.

159.    Plaintiff Vicki Klein is a citizen of Iowa and resides in Perry, Iowa. At various times within the Relevant Time Period (defined below), Plaintiff Klein, purchased Hill's products. Consumption of the product, by Klein's pet, resulted in illness and death of the animal.

160.    Plaintiff Faye Knighten is a citizen of Louisiana and resides in Baton Rouge, Louisiana. At various times within the Relevant Time Period (defined below), Plaintiff Knighten, purchased Hill's products. Consumption of the product, by Knighten's pet, resulted in illness of the

animal.

161.    Plaintiff TJ Knowland is a citizen of Indiana and resides in Greenwood, Indiana. At various times within the Relevant Time Period (defined below), Plaintiff Knowland, purchased Hill's products. Consumption of the product, by Knowland's pet, resulted in illness and death of the animal.

162.    Plaintiff Karen Kolb is a citizen of Missouri and resides in Forsyth, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff Kolb, purchased Hill's products. Consumption of the product, by Kolb's pet, resulted in illness and death of the animal.

163.    Plaintiff Teresa Krage is a citizen of Washington and resides in Shelton, Washington. At various times within the Relevant Time Period (defined below), Plaintiff Krage, purchased Hill's products. Consumption of the product, by Krage's pet, resulted in illness and death of the animal.

164.    Plaintiff Matthew Krause is a citizen of California and resides in Chula Vista, California. At various times within the Relevant Time Period (defined below), Plaintiff Krause, purchased Hill's products. Consumption of the product, by Krause's pet, resulted in illness of the animal.

165.    Plaintiff James Lambert is a citizen of Arizona and resides in Phoenix, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Lambert, purchased Hill's products. Consumption of the product, by Lambert's pet, resulted in illness and death of the animal.

166.    Plaintiff Rosemary Lanctot is a citizen of Michigan and resides in Taylor, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Lanctot, purchased Hill's products.

167.    Plaintiff Diana Larosa is a citizen of Pennsylvania and resides in Skytop, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Larosa,

purchased Hill's products. Consumption of the product, by Larosa's pet, resulted in illness of the animal.

168.     Plaintiff Lori Lawhead is a citizen of New York and resides in Hamburg, New York. At various times within the Relevant Time Period (defined below), Plaintiff Lawhead, purchased Hill's products. Consumption of the product, by Lawhead's pet, resulted in illness and death of the animal.

169.     Plaintiff Lynette Lawrence-Kirk is a citizen of Michigan and resides in Sandusky, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Lawrence-Kirk, purchased Hill's products. Consumption of the product, by Lawrence-Kirk's pet, resulted in illness of the animal.

170.     Plaintiff Tammy Lechner is a citizen of Arizona and resides in Apache Junction, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Lechner, purchased Hill's products. Consumption of the product, by Lechner's pets, resulted in illness, and death of the animal(s).

171.     Plaintiff Dana Lewis is a citizen of Illinois and resides in Troy, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Lewis, purchased Hill's products. Consumption of the product, by Lewis' pet, resulted in illness of the animal.

172.     Plaintiff Francesca Logan is a citizen of New Jersey and resides in Butler, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Logan, purchased Hill's products. Consumption of the product, by Logan's pet, resulted in illness of the animal.

173.     Plaintiff Rebecca Lovejoy is a citizen of Wisconsin and resides in Superior, Wisconsin. At various times within the Relevant Time Period (defined below), Plaintiff Lovejoy, purchased Hill's products. Consumption of the product, by Lovejoy's pet, resulted in illness of the

animal.

174.    Plaintiff David Lovell is a citizen of Minnesota and resides in Newport, Minnesota. At various times within the Relevant Time Period (defined below), Plaintiff Lovell, purchased Hill's products. Consumption of the product, by Lovell's pet, resulted in illness of the animal.

175.    Plaintiff Donald Lynch is a citizen of California and resides in McClellan, California. At various times within the Relevant Time Period (defined below), Plaintiff Lynch, purchased Hill's products.

176.    Plaintiff Enrique Mancia is a citizen of New York and resides in Brooklyn, New York. At various times within the Relevant Time Period (defined below), Plaintiff Mancia, purchased Hill's products. Consumption of the product, by Mancia's pet, resulted in illness of the animal.

177.    Plaintiff Sarah Mangrich is a citizen of Iowa and resides in Dunkerton, Iowa. At various times within the Relevant Time Period (defined below), Plaintiff Mangrich, purchased Hill's products. Consumption of the product, by Mangrich's pet, resulted in illness and death of the animal.

178.    Plaintiff Latonya Mark is a citizen of Mississippi and resides in Sandy Hook, Mississippi. At various times within the Relevant Time Period (defined below), Plaintiff Mark, purchased Hill's products. Consumption of the product, by Mark's pet, resulted in illness of the animal.

179.    Plaintiff Michael Markiewicz is a citizen of Arkansas and resides in Fairfield Bay, Arkansas. At various times within the Relevant Time Period (defined below), Plaintiff Markiewicz, purchased Hill's products. Consumption of the product, by Markiewicz's pet, resulted in illness and death of the animal.

180.    Plaintiff Kelly Matthews is a citizen of Illinois and resides in Springfield, Illinois.

At various times within the Relevant Time Period (defined below), Plaintiff Matthews, purchased Hill's products. Consumption of the product, by Matthews' pet, resulted in illness of the animal.

181.    Plaintiff Tanya Matthews is a citizen of Florida and resides in Clearwater, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Matthews, purchased Hill's products. Consumption of the product, by Matthews's pet, resulted in illness and death of the animal.

182.    Plaintiff Stacey Mayes is a citizen of California and resides in Los Angeles, California. At various times within the Relevant Time Period (defined below), Plaintiff Mayes, purchased Hill's products.

183.    Plaintiff Kenneth McGlothen is a citizen of California and resides in Sacramento, California. At various times within the Relevant Time Period (defined below), Plaintiff McGlothen, purchased Hill's products. Consumption of the product, by McGlothen's pet, resulted in illness and death of the animal.

184.    Plaintiff Yolonda McGregor is a citizen of Missouri and resides in Kansas City, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff McGregor, purchased Hill's products. Consumption of the product, by McGregor's pet, resulted in illness and death of the animal.

185.    Plaintiff Cheryl McMurray is a citizen of Oklahoma and resides in Oklahoma City, Oklahoma. At various times within the Relevant Time Period (defined below), Plaintiff McMurray, purchased Hill's products. Consumption of the product, by McMurray's pet, resulted in illness of the animal.

186.    Plaintiff Julia Medina is a citizen of Florida and resides in St Augustine, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Medina, purchased Hill's products. Consumption of the product, by Medina's pet, resulted in illness of the animal.

187.   Plaintiff Maria Mendez is a citizen of New Jersey and resides in Paterson, New Jersey. At various times within the Relevant Time Period (defined below), Plaintiff Mendez, purchased Hill's products. Consumption of the product, by Mendez's pet, resulted in illness of the animal.

188.   Plaintiff Giuseppe Merolla is a citizen of Rhode Island and resides in North Kingstown, Rhode Island. At various times within the Relevant Time Period (defined below), Plaintiff Merolla, purchased Hill's products. Consumption of the product, by Merolla's pet, resulted in illness and death of the animal.

189.   Plaintiff Sylvia Miller is a citizen of Illinois and resides in Quincy, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Miller, purchased Hill's products. Consumption of the product, by Miller's pet, resulted in illness of the animal.

190.   Plaintiff Amanda Monita is a citizen of North Carolina and resides in Winston Salem, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Monita, purchased Hill's products. Consumption of the product, by Monita's pet, resulted in illness of the animal.

191.   Plaintiff Dave Moody is a citizen of Utah and resides in Highland, Utah. At various times within the Relevant Time Period (defined below), Plaintiff Moody, purchased Hill's products. Consumption of the product, by Moody's pet, resulted in illness of the animal.

192.   Plaintiff Erica Moreno is a citizen of Texas and resides in Cypress, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Moreno, purchased Hill's products.

193.   Plaintiff Morgan Mosier is a citizen of New York and resides in Potsdam, New York. At various times within the Relevant Time Period (defined below), Plaintiff Mosier, purchased Hill's products. Consumption of the product, by Mosier's pet, resulted in illness of the

animal.

194.    Plaintiff Brenda Myers is a citizen of Maryland and resides in Emmitsburg, Maryland. At various times within the Relevant Time Period (defined below), Plaintiff Myers, purchased Hill's products. Consumption of the product, by Myers' pet, resulted in illness of the animal.

195.    Plaintiff Jennifer Naeve is a citizen of Iowa and resides in Dewitt, Iowa. At various times within the Relevant Time Period (defined below), Plaintiff Naeve, purchased Hill's products. Consumption of the product, by Naeve's pet, resulted in illness and death of the animal.

196.    Plaintiff Robert Neve is a citizen of Pennsylvania and resides in Coraopolis, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Neve, purchased Hill's products. Consumption of the product, by Neve's pet, resulted in illness of the animal.

197.    Plaintiff Linda Niday is a citizen of Florida and resides in Naples, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Niday, purchased Hill's products. Consumption of the product, by Niday's pet, resulted in illness of the animal.

198.    Plaintiff Steven Oakley is a citizen of South Carolina and resides in Myrtle Beach, South Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Oakley, purchased Hill's products. Consumption of the product, by Oakley's pet, resulted in illness and death of the animal.

199.    Plaintiff Liz O'Connell is a citizen of Virginia and resides in Mechanicsville, Virginia. At various times within the Relevant Time Period (defined below), Plaintiff O'Connell, purchased Hill's products.

200.    Plaintiff Alexander Patterson is a citizen of Wisconsin and resides in Milwaukee, Wisconsin. At various times within the Relevant Time Period (defined below), Plaintiff Patterson,

purchased Hill's products. Consumption of the product, by Patterson's pet, resulted in illness and death of the animal.

201.    Plaintiff Jeff Pedersen is a citizen of Illinois and resides in Chicago, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Pedersen, purchased Hill's products. Consumption of the product, by Pedersen's pet, resulted in illness and death of the animal.

202.    Plaintiff Lilly Perez is a citizen of Tennessee and resides in Bolivar, Tennessee. At various times within the Relevant Time Period (defined below), Plaintiff Perez, purchased Hill's products. Consumption of the product, by Perez's pet, resulted in illness and death of the animal.

203.    Plaintiff Khanh Pham is a citizen of Texas and resides in Sugar Land, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Pham, purchased Hill's products. Consumption of the product, by Pham's pet, resulted in illness and death of the animal.

204.    Plaintiff Alex Ponder is a citizen of Massachusetts and resides in Haverhill, Massachusetts. At various times within the Relevant Time Period (defined below), Plaintiff Ponder, purchased Hill's products.

205.    Plaintiff Alice Poole is a citizen of Texas and resides in Houston, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Poole, purchased Hill's products. Consumption of the product, by Poole's pet, resulted in illness of the animal.

206.    Plaintiff Rada Popova is a citizen of Ohio and resides in Beachwood, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Popova, purchased Hill's products. Consumption of the product, by Popova's pet, resulted in illness of the animal.

207.    Plaintiff Robin Prebe is a citizen of Illinois and resides in Crestwood, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Prebe, purchased Hill's products. Consumption of the product, by Prebe's pet, resulted in illness and death of the animal.

208.    Plaintiff Rosalinda Quintero is a citizen of California and resides in Fontana, California. At various times within the Relevant Time Period (defined below), Plaintiff Quintero, purchased Hill's products. Consumption of the product, by Quintero's pet, resulted in illness of the animal.

209.    Plaintiff Angelena Raines is a citizen of Ohio and resides in Londonderry, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Raines, purchased Hill's products. Consumption of the product, by Raines's pet, resulted in illness and death of the animal.

210.    Plaintiff Romona Reed is a citizen of Texas and resides in Austin, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Reed, purchased Hill's products. Consumption of the product, by Reed's pet, resulted in illness of the animal.

211.    Plaintiff Eliza Reid is a citizen of California and resides in Lancaster, California. At various times within the Relevant Time Period (defined below), Plaintiff Reid, purchased Hill's products. Consumption of the product, by Reid's pet, resulted in illness and death of the animal.

212.    Plaintiff Sara Rhoten is a citizen of Virginia and resides in Richmond, Virginia. At various times within the Relevant Time Period (defined below), Plaintiff Rhoten, purchased Hill's products. Consumption of the product, by Rhoten's pet, resulted in illness of the animal.

213.    Plaintiff Billie Rice is a citizen of Nebraska and resides in Omaha, Nebraska. At various times within the Relevant Time Period (defined below), Plaintiff Rice, purchased Hill's products. Consumption of the product, by Rice's pet, resulted in illness and death of the animal.

214.    Plaintiff Lekendra Richardson is a citizen of Georgia and resides in Jonesboro, Georgia. At various times within the Relevant Time Period (defined below), Plaintiff Richardson, purchased Hill's products. Consumption of the product, by Richardson's pet, resulted in illness of the animal.

215.    Plaintiff Cheryl Riener is a citizen of South Carolina and resides in Clover, South

Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Riener, purchased Hill's products. Consumption of the product, by Riener's pet, resulted in illness of the animal.

216.     Plaintiff Robert Riordan is a citizen of Pennsylvania and resides in Pocono Lake, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Riordan, purchased Hill's products.

217.     Plaintiff Karen Roach is a citizen of South Carolina and resides in Piedmont, South Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Roach, purchased Hill's products. Consumption of the product, by Roach's pet, resulted in illness of the animal.

218.     Plaintiff Vanessa Roberts is a citizen of Idaho and resides in Nampa, Idaho. At various times within the Relevant Time Period (defined below), Plaintiff Roberts, purchased Hill's products. Consumption of the product, by Roberts' pet, resulted in illness and death of the animal.

219.     Plaintiff Anthony Rodriguez is a citizen of Georgia and resides in Conyers, Georgia. At various times within the Relevant Time Period (defined below), Plaintiff Rodriguez, purchased Hill's products. Consumption of the product, by Rodriguez's pet, resulted in illness and death of the animal.

220.     Plaintiff Karen Rohrman is a citizen of Georgia and resides in Evans, Georgia. At various times within the Relevant Time Period (defined below), Plaintiff Rohrman, purchased Hill's products. Consumption of the product, by Rohrman's pet, resulted in illness and death of the animal.

221.     Plaintiff Michael Rojas is a citizen of California and resides in Beverly Hills, California. At various times within the Relevant Time Period (defined below), Plaintiff Rojas, purchased Hill's products. Consumption of the product, by Rojas's pet, resulted in illness and death

of the animal.

222. Plaintiff Carrie Roman is a citizen of Pennsylvania and resides in Whitaker, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Roman, purchased Hill's products.

223. Plaintiff Lori Root is a citizen of Pennsylvania and resides in Levittown, Pennsylvania. At various times within the Relevant Time Period (defined below), Plaintiff Root, purchased Hill's products. Consumption of the product, by Root's pet, resulted in illness of the animal.

224. Plaintiff Taakena Ross is a citizen of Georgia and resides in Hiram, Georgia. At various times within the Relevant Time Period (defined below), Plaintiff Ross, purchased Hill's products. Consumption of the product, by Ross' pet, resulted in illness of the animal.

225. Plaintiff Luis Ruiz is a citizen of California and resides in Antioch, California. At various times within the Relevant Time Period (defined below), Plaintiff Ruiz, purchased Hill's products. Consumption of the product, by Ruiz's pet, resulted in illness and death of the animal.

226. Plaintiff Debra Russell is a citizen of Massachusetts and resides in Plymouth, Massachusetts. At various times within the Relevant Time Period (defined below), Plaintiff Russell, purchased Hill's products. Consumption of the product, by Russell's pet, resulted in illness and death of the animal.

227. Plaintiff Monique Salerno is a citizen of New York and resides in Flushing, New York. At various times within the Relevant Time Period (defined below), Plaintiff Salerno, purchased Hill's products. Consumption of the product, by Salerno's pet, resulted in illness of the animal.

228. Plaintiff Doug Sannan is a citizen of Minnesota and resides in Bloomington, Minnesota. At various times within the Relevant Time Period (defined below), Plaintiff Sannan,

purchased Hill's products. Consumption of the product, by Sannan's pet, resulted in illness of the animal.

229.    Plaintiff Melissa Saturno is a citizen of Florida and resides in Sebring, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Saturno, purchased Hill's products. Consumption of the product, by Saturno's pet, resulted in illness and death of the animal.

230.    Plaintiff Elyssa Schneider is a citizen of Arizona and resides in Phoenix, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Schneider, purchased Hill's products.

231.    Plaintiff Carol Schupp is a citizen of Montana and resides in Superior, Montana. At various times within the Relevant Time Period (defined below), Plaintiff Schupp, purchased Hill's products.

232.    Plaintiff Tiffany Scott is a citizen of Alabama and resides in Pinckard, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Scott, purchased Hill's products. Consumption of the product, by Scott's pet, resulted in illness of the animal.

233.    Plaintiff Karen Senour is a citizen of Oregon and resides in Hillsboro, Oregon. At various times within the Relevant Time Period (defined below), Plaintiff Senour, purchased Hill's products. Consumption of the product, by Senour's pet, resulted in illness of the animal.

234.    Plaintiff Erica Seterstrom is a citizen of Minnesota and resides in Bloomington, Minnesota. At various times within the Relevant Time Period (defined below), Plaintiff Seterstrom, purchased Hill's products. Consumption of the product, by Seterstrom's pet, resulted in illness and death of the animal.

235.    Plaintiff Amanda Sharkey is a citizen of Florida and resides in Riverview, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Sharkey, purchased Hill's products.

236.    Plaintiff Sharon Shibley is a citizen of North Carolina and resides in Clayton, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Shibley, purchased Hill's products.

237.    Plaintiff Samara Shofner is a citizen of Florida and resides in Tampa, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Shofner, purchased Hill's products. Consumption of the product, by Shofner's pet, resulted in illness and death of the animal.

238.    Plaintiff Chuck Silveira is a citizen of Arizona and resides in Prescott, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Silveira, purchased Hill's products. Consumption of the product, by Silveira's pet, resulted in illness of the animal.

239.    Plaintiff Andrea Smith is a citizen of North Carolina and resides in Burlington, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Smith, purchased Hill's products.

240.    Plaintiff Jeff Snyder is a citizen of Oklahoma and resides in Inola, Oklahoma. At various times within the Relevant Time Period (defined below), Plaintiff Snyder, purchased Hill's products. Consumption of the product, by Snyder's pet, resulted in illness and death of the animal.

241.    Plaintiff Tammy Snyder is a citizen of Illinois and resides in Quincy, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Snyder, purchased Hill's products. Consumption of the product, by Snyder's pet, resulted in illness and death of the animal.

242.    Plaintiff William Spillers is a citizen of North Carolina and resides in Raleigh, North Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Spillers, purchased Hill's products. Consumption of the product, by Spillers's pet, resulted in illness and death of the animal.

243.    Plaintiff Karen Stanfield is a citizen of Alabama and resides in Boaz, Alabama. At various times within the Relevant Time Period (defined below), Plaintiff Stanfield, purchased

Hill's products. Consumption of the product, by Stanfield's pet, resulted in illness of the animal.

244.    Plaintiff Lisa Steinberg is a citizen of Florida and resides in Weston, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Steinberg, purchased Hill's products. Consumption of the product, by Steinberg's pet, resulted in illness of the animal.

245.    Plaintiff Heather Stewart is a citizen of South Carolina and resides in Columbia, South Carolina. At various times within the Relevant Time Period (defined below), Plaintiff Stewart, purchased Hill's products. . Consumption of the product, by Stewart's pet, resulted in illness of the animal.

246.    Plaintiff Donna Stordahl is a citizen of Arizona and resides in Kingman, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Stordahl, purchased Hill's products. Consumption of the product, by Stordahl's pet, resulted in illness of the animal.

247.    Plaintiff Sheldon Sturges is a citizen of Arizona and resides in Phoenix, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Sturges, purchased Hill's products. Consumption of the product, by Sturges' pet, resulted in illness of the animal.

248.    Plaintiff Brenda Summers is a citizen of California and resides in Palmdale, California. At various times within the Relevant Time Period (defined below), Plaintiff Summers, purchased Hill's products. Consumption of the product, by Summers' pet, resulted in illness of the animal.

249.    Plaintiff Theresa Terhark is a citizen of Minnesota and resides in Maplewood, Minnesota. At various times within the Relevant Time Period (defined below), Plaintiff Terhark, purchased Hill's products. Consumption of the product, by Terhark's pet, resulted in illness and death of the animal.

250.    Plaintiff Veronica Thomas-Kowalak is a citizen of Massachusetts and resides in Worcester, Massachusetts. At various times within the Relevant Time Period (defined below),

Plaintiff Thomas-Kowalak, purchased Hill's products. Consumption of the product, by Thomas-Kowalak's pet, resulted in illness of the animal.

251.    Plaintiff Erik Tipton is a citizen of Utah and resides in Bountiful, Utah. At various times within the Relevant Time Period (defined below), Plaintiff Tipton, purchased Hill's products. Consumption of the product, by Tipton's pet, resulted in illness of the animal.

252.    Plaintiff Steven Tish is a citizen of California and resides in Pismo Beach, California. At various times within the Relevant Time Period (defined below), Plaintiff Tish, purchased Hill's products.

253.    Plaintiff Teresa Tolnay is a citizen of Missouri and resides in Camdenton, Missouri. At various times within the Relevant Time Period (defined below), Plaintiff Tolnay, purchased Hill's products. Consumption of the product, by Tolnay's pet, resulted in illness of the animal.

254.    Plaintiff Demetrios Tsiptsis is a citizen of Virginia and resides in Richmond, Virginia. At various times within the Relevant Time Period (defined below), Plaintiff Tsiptsis, purchased Hill's products. Consumption of the product, by Tsiptsis' pet, resulted in illness and death of the animal.

255.    Plaintiff Ted Turnbough is a citizen of Florida and resides in Panama City Beach, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Turnbough, purchased Hill's products. Consumption of the product, by Turnbough's pet, resulted in illness and death of the animal.

256.    Plaintiff Luann Tyborski is a citizen of Wisconsin and resides in Saint Francis, Wisconsin. At various times within the Relevant Time Period (defined below), Plaintiff Tyborski, purchased Hill's products. Consumption of the product, by Tyborski's pet, resulted in illness and death of the animal.

257.    Plaintiff Kristine Valenti is a citizen of Michigan and resides in Grand Ledge,

Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Valenti, purchased Hill's products.

258.    Plaintiff Kayla Vanwinsen is a citizen of Ohio and resides in Fairfield, Ohio. At various times within the Relevant Time Period (defined below), Plaintiff Vanwinsen, purchased Hill's products. Consumption of the product, by Vanwinsen's pet, resulted in illness and death of the animal.

259.    Plaintiff Kristina Vaughn is a citizen of Tennessee and resides in Kingsport, Tennessee. At various times within the Relevant Time Period (defined below), Plaintiff Vaughn, purchased Hill's products. Consumption of the product, by Vaughn's pet, resulted in illness of the animal.

260.    Plaintiff Letonya Vaughn is a citizen of Kentucky and resides in London, Kentucky. At various times within the Relevant Time Period (defined below), Plaintiff Vaughn, purchased Hill's products. Consumption of the product, by Vaughn's pet, resulted in illness of the animal.

261.    Plaintiff Tamara Vincent is a citizen of Michigan and resides in Gobles, Michigan. At various times within the Relevant Time Period (defined below), Plaintiff Vincent, purchased Hill's products. Consumption of the product, by Vincent's pet, resulted in illness of the animal.

262.    Plaintiff Joanna Viola is a citizen of Arizona and resides in Florence, Arizona. At various times within the Relevant Time Period (defined below), Plaintiff Viola, purchased Hill's products. Consumption of the product, by Viola's pet, resulted in illness and death of the animal.

263.    Plaintiff Candace Wallace is a citizen of Texas and resides in Killeen, Texas. At various times within the Relevant Time Period (defined below), Plaintiff Wallace, purchased Hill's products. Consumption of the product, by Wallace's pet, resulted in illness and death of the animal.

264.    Plaintiff Bailee Walsh is a citizen of Illinois and resides in Round Lake, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Walsh, purchased Hill's

products. Consumption of the product, by Walsh's pet, resulted in illness and death of the animal.

265.    Plaintiff Laura Was is a citizen of California and resides in Colton, California. At various times within the Relevant Time Period (defined below), Plaintiff Was, purchased Hill's products. Consumption of the product, by Was' pet, resulted in illness and death of the animal.

266.    Plaintiff Elizabeth Watson is a citizen of Mississippi and resides in New Albany, Mississippi. At various times within the Relevant Time Period (defined below), Plaintiff Watson, purchased Hill's products. Consumption of the product, by Watson's pet, resulted in illness of the animal.

267.    Plaintiff Danya Wedemier is a citizen of New York and resides in Laurelton, New York. At various times within the Relevant Time Period (defined below), Plaintiff Wedemier, purchased Hill's products. Consumption of the product, by Wedemier's pet, resulted in illness of the animal.

268.    Plaintiff Suzanne Welch is a citizen of Florida and resides in Cape Coral, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Welch, purchased Hill's products. Consumption of the product, by Welch's pet, resulted in illness of the animal.

269.    Plaintiff Debra Wells is a citizen of New York and resides in Saugerties, New York. At various times within the Relevant Time Period (defined below), Plaintiff Wells, purchased Hill's products. Consumption of the product, by Wells' pet, resulted in illness of the animal.

270.    Plaintiff Joani Werner is a citizen of Minnesota and resides in Shoreview, Minnesota. At various times within the Relevant Time Period (defined below), Plaintiff Werner, purchased Hill's products. Consumption of the product, by Werner's pet, resulted in illness and death of the animal.

271.    Plaintiff Diane Whitaker is a citizen of California and resides in El Cajon, California. At various times within the Relevant Time Period (defined below), Plaintiff Whitaker,

purchased Hill's products. Consumption of the product, by Whitaker's pet, resulted in illness of the animal.

272.    Plaintiff Deanna Williams is a citizen of California and resides in San Jose, California. At various times within the Relevant Time Period (defined below), Plaintiff Williams, purchased Hill's products. Consumption of the product, by Williams' pet, resulted in illness of the animal.

273.    Plaintiff Gina Wimsatt is a citizen of Kentucky and resides in Latonia, Kentucky. At various times within the Relevant Time Period (defined below), Plaintiff Wimsatt, purchased Hill's products. Consumption of the product, by Wimsatt's pet, resulted in illness of the animal.

274.    Plaintiff Woodson Wood Jr is a citizen of California and resides in Sacramento, California. At various times within the Relevant Time Period (defined below), Plaintiff Wood Jr, purchased Hill's products. Consumption of the product, by Wood Jr's pet, resulted in illness and death of the animal.

275.    Plaintiff Rachelle Wyse is a citizen of California and resides in Sherman Oaks, California. At various times within the Relevant Time Period (defined below), Plaintiff Wyse, purchased Hill's products. Consumption of the product, by Wyse's pet, resulted in illness and death of the animal.

276.    Plaintiff John Yoo is a citizen of Illinois and resides in Addison, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Yoo, purchased Hill's products. Consumption of the product, by Yoo's pet, resulted in illness of the animal.

277.    Plaintiff Robert Younger is a citizen of Florida and resides in Punta Gorda, Florida. At various times within the Relevant Time Period (defined below), Plaintiff Younger, purchased Hill's products.

278.    Plaintiff Betty Zambrano is a citizen of Florida and resides in Coral Gables, Florida.

At various times within the Relevant Time Period (defined below), Plaintiff Zambrano, purchased Hill's products. Consumption of the product, by Zambrano's pet, resulted in illness of the animal.

279.    Plaintiff Michael Zinzer is a citizen of Illinois and resides in Chicago, Illinois. At various times within the Relevant Time Period (defined below), Plaintiff Zinzer, purchased Hill's products. Consumption of the product, by Zinzer's pet, resulted in illness of the animal. Plaintiff Michael Zinzer is a citizen of Illinois and resides in Chicago, Illinois. At various times within the Relevant Time Period, Plaintiff Zinzer purchased Hill's Products.

280.    Defendant Hill's Pet Nutrition is a Kansas corporation with its corporate headquarters located at 400 South West 8th Street, Topeka, Kansas 66603. Defendant markets, advertises, distributes and sells various pet food products nationwide, including the Hill's Products covered by this action.

## JURISDICTION AND VENUE

281.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

282.    The Court can exercise supplemental jurisdiction over the Class's state law claims under 28 U.S.C. § 1367.

283.    The Court can exercise personal jurisdiction over Defendant because it has regular and systematic contacts with the state of Kansas, in which it does business and places the Defendant's Products in the stream of commerce.

284.    This Court is a proper venue for this action, pursuant to 28 U.S.C. § 1391(b)(1), because Defendant's principle place of business is in this District and it is subject to personal

jurisdiction in this District.

## **CLASS ACTION ALLEGATIONS**

285.    Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Fed. R. Civ. P. 23.

### ***The Classes Defined***

286.    Plaintiffs bring this complaint on behalf of themselves and the following Class Members ("Nationwide Class"):

All persons in the United States who purchased Hill's Products during the Relevant Time Period.

287.    Plaintiffs Battles, Bice, Crawford, Eddie, Kay, Scott and Stanfield ("Alabama Plaintiffs") also seek certification of the following state subclass ("Alabama Subclass"):

All persons residing in Alabama who purchased Hill's Products at various times within the Relevant Time Period.

288.    Plaintiff Haughaboo ("Alaska Plaintiff") also seeks certification of the following state subclass ("Alaska Subclass"):

All persons residing in Alaska who purchased Hill's Products at various times within the Relevant Time Period.

289.    Plaintiffs Gruhlke, Lambert, Lechner, Schneider, Silveira, Stordahl, Sturges, and Viola ("Arizona Plaintiffs") also seek certification of the following state subclass ("Arizona Subclass"):

All persons residing in Arizona who purchased Hill's Products at various times within the Relevant Time Period.

290.    Plaintiffs Bazinet, Brewer, Contreras, and Markiewicz ("Arkansas Plaintiffs") also

seek certification of the following state subclass ("Arkansas Subclass"):

> All persons residing in Arkansas who purchased Hill's Products at various times within the Relevant Time Period.

291.    Plaintiffs Alberto, Andersen, Apelian, Baldwin, Baleria, Banks, Belisle, Bosch, Byrns, Granger, Gren, Brinitha Harris, Hassan, Hemphill, Hodsdon, Jarvis, Kim, Krause, Lynch, Mayes, McGlothen, Quintero, Reid, Rojas , Ruiz, Summers, Tish, Was, Whitaker, Williams, Wood Jr, and Wyse ("California Plaintiffs") also seek certification of the following state subclass ("California Subclass"):

> All persons residing in California who purchased Hill's Products at various times within the Relevant Time Period.

292.    Plaintiff Hollister ("Colorado Plaintiff") also seeks certification of the following state subclass ("Colorado Subclass"):

> All persons residing in Colorado who purchased Hill's Products at various times within the Relevant Time Period.

293.    Plaintiff Hines-Cumberledge ("Connecticut Plaintiff") also seeks certification of the following state subclass ("Connecticut Subclass"):

> All persons residing in Connecticut who purchased Hill's Products at various times within the Relevant Time Period.

294.    Plaintiffs Amor, Bartholomew, Berg, Bonfiglio, Chung-A-On, Emmerman, Ethridge, Eyler, Fleites, Gibbs, Kevin Harris, Andrea Jones, Tanya Matthews, Medina, Niday, Saturno, Sharkey, Shofner, Steinberg, Turnbough, Welch, Younger, and Zambrano ("Florida Plaintiffs") also seek certification of the following state subclass ("Florida Subclass"):

> All persons residing in Florida who purchased Hill's Products at various times within the Relevant Time Period.

295.    Plaintiffs Alvin, Bush, Davenporrt, Richardson, Rodriguez, Rohrman, and Ross ("Georgia Plaintiffs") also seek certification of the following state subclass ("Georgia Subclass"):

All persons residing in Georgia who purchased Hill's Products at various times within the Relevant Time Period.

296.    Plaintiff Roberts ("Idaho Plaintiff") also seeks certification of the following state subclass ("Idaho Subclass"):

All persons residing in Idaho who purchased Hill's Products at various times within the Relevant Time Period.

297.    Plaintiffs Bowers, Lashanta Davis, Peggy Davis, Jessica Donovan, Michael Donovan, Esparza, Deborah Jones, Lewis, Kelly Matthews, Miller, Pedersen, Prebe, Tammy Snyder, Walsh, Yoo, and Zinzer ("Illinois Plaintiffs") also seek certification of the following state subclass ("Illinois Subclass"):

All persons residing in Illinois who purchased Hill's Products at various times within the Relevant Time Period.

298.    Plaintiffs Branch, Finch, Friend, Betty Klein, and Knowland ("Indiana Plaintiffs") also seek certification of the following state subclass ("Indiana Subclass"):

All persons residing in Indiana who purchased Hill's Products at various times within the Relevant Time Period.

299.    Plaintiffs Tim Jones, Marla King, Vicki Klein, Mangrich, and Naeve ("Iowa Plaintiffs") also seek certification of the following state subclass ("Iowa Subclass"):

All persons residing in Iowa who purchased Hill's Products at various times within the Relevant Time Period.

300.    Plaintiffs Carty and Cloutier ("Kansas Plaintiffs") also seek certification of the following state subclass ("Kansas Subclass"):

All persons residing in Kansas who purchased Hill's Products at various times within the Relevant Time Period.

301.    Plaintiffs Calcote, Huff, Letonya Vaughn, and Wimsatt ("Kentucky Plaintiffs") also seek certification of the following state subclass ("Kentucky Subclass"):

All persons residing in Kentucky who purchased Hill's Products at various times within the Relevant Time Period.

302.    Plaintiffs Benefield, Harrison, and Knighten ("Louisiana Plaintiffs") also seek certification of the following state subclass ("Louisiana Subclass"):

All persons residing in Louisiana who purchased Hill's Products at various times within the Relevant Time Period.

303.    Plaintiff Blanchard ("Maine Plaintiff") also seeks certification of the following state subclass ("Maine Subclass"):

All persons residing in Maine who purchased Hill's Products at various times within the Relevant Time Period.

304.    Plaintiffs Fields and Myers ("Maryland Plaintiffs") also seek certification of the following state subclass ("Maryland Subclass"):

All persons residing in Maryland who purchased Hill's Products at various times within the Relevant Time Period.

305.    Plaintiffs Annarummo, Cannata, Hill, Ponder, Russell, and Thomas-Kowalak ("Massachusetts Plaintiffs") also seek certification of the following state subclass ("Massachusetts Subclass"):

All persons residing in Massachusetts who purchased Hill's Products at various times within the Relevant Time Period.

306.    Plaintiffs Boos, Jerels Dillon, Haviland, Klaassen, Lanctot, Lawrence-Kirk,

Valenti, and Vincent ("Michigan Plaintiffs") also seek certification of the following state subclass ("Michigan Subclass"):

> All persons residing in Michigan who purchased Hill's Products at various times within the Relevant Time Period.

307.    Plaintiffs Lovell, Sannan, Seterstrom, Terhark, and Werner ("Minnesota Plaintiffs") also seek certification of the following state subclass ("Minnesota Subclass"):

> All persons residing in Minnesota who purchased Hill's Products at various times within the Relevant Time Period.

308.    Plaintiffs Cotton, Culley, Draper, Shawn King, Mark, and Watson ("Mississippi Plaintiffs") also seek certification of the following state subclass ("Mississippi Subclass"):

> All persons residing in Mississippi who purchased Hill's Products at various times within the Relevant Time Period.

309.    Plaintiffs Favazza, Fay, Ferguson, Karr, Kolb, McGregor, and Tolnay ("Missouri Plaintiffs") also seek certification of the following state subclass ("Missouri Subclass"):

> All persons residing in Missouri who purchased Hill's Products at various times within the Relevant Time Period.

310.    Plaintiff Schupp ("Montana Plaintiff") also seeks certification of the following state subclass ("Montana Subclass"):

> All persons residing in Montana who purchased Hill's Products at various times within the Relevant Time Period.

311.    Plaintiff Rice ("Nebraska Plaintiff") also seeks certification of the following state subclass ("Nebraska Subclass"):

> All persons residing in Nebraska who purchased Hill's Products at various times within the Relevant Time Period.

312.    Plaintiff Cervantes ("Nevada Plaintiff") also seeks certification of the following state subclass ("Nevada Subclass"):

All persons residing in Nevada who purchased Hill's Products at various times within the Relevant Time Period.

313.    Plaintiff Judd ("New Hampshire Plaintiff") also seeks certification of the following state subclass ("New Hampshire Subclass"):

All persons residing in New Hampshire who purchased Hill's Products at various times within the Relevant Time Period.

314.    Plaintiffs Costello, Friedman Pinones, Galindo, Henderson, Kelly, Logan, and Mendez ("New Jersey Plaintiffs") also seek certification of the following state subclass ("New Jersey Subclass"):

All persons residing in New Jersey who purchased Hill's Products at various times within the Relevant Time Period.

315.    Plaintiff Hutchins ("New Mexico Plaintiff") also seeks certification of the following state subclass ("New Mexico Subclass"):

All persons residing in New Mexico who purchased Hill's Products at various times within the Relevant Time Period.

316.    Plaintiffs Buteau, Delgado, Ecton, Sally Hall, Kane, Lawhead, Mancia, Mosier, Salerno, Wedemier, and Wells ("New York Plaintiffs") also seek certification of the following state subclass ("New York Subclass"):

All persons residing in New York who purchased Hill's Products at various times within the Relevant Time Period.

317.    Plaintiffs Bryant, Donna Dillon, Guinn, Kathleen Hall, Joyner, Monita, Shibley, Smith, and Spillers ("North Carolina Plaintiffs") also seek certification of the following state

subclass ("North Carolina Subclass"):

> All persons residing in North Carolina who purchased Hill's Products at various times within the Relevant Time Period.

318.    Plaintiffs Avdelas, Bulger, Burkett, Delaney, Hopkins, Johnson, Popova, Raines, and Vanwinsen ("Ohio Plaintiffs") also seek certification of the following state subclass ("Ohio Subclass"):

> All persons residing in Ohio who purchased Hill's Products at various times within the Relevant Time Period.

319.    Plaintiffs Clark, McMurray, and Jeff Snyder ("Oklahoma Plaintiffs") also seek certification of the following state subclass ("Oklahoma Subclass"):

> All persons residing in Oklahoma who purchased Hill's Products at various times within the Relevant Time Period.

320.    Plaintiff Senour ("Oregon Plaintiff") also seeks certification of the following state subclass ("Oregon Subclass"):

> All persons residing in Oregon who purchased Hill's Products at various times within the Relevant Time Period.

321.    Plaintiffs Anerino, Chehouri, Jonathan Davis, Devine, Larosa, Neve, Riordan, Roman, and Root ("Pennsylvania Plaintiffs") also seek certification of the following state subclass ("Pennsylvania Subclass"):

> All persons residing in Pennsylvania who purchased Hill's Products at various times within the Relevant Time Period.

322.    Plaintiffs Brushett and Merolla ("Rhode Island Plaintiffs") also seek certification of the following state subclass ("Rhode Island Subclass"):

> All persons residing in Rhode Island who purchased Hill's Products at various

times within the Relevant Time Period.

323.    Plaintiffs Heidt, Anya Jones, Vincent Jones, Oakley, Riener, Roach, and Stewart ("South Carolina Plaintiffs") also seek certification of the following state subclass ("South Carolina Subclass"):

All persons residing in South Carolina who purchased Hill's Products at various

times within the Relevant Time Period.

324.    Plaintiffs Freddy Carr, Mary Carr, Perez, and Kristina Vaughn ("Tennessee Plaintiffs") also seek certification of the following state subclass ("Tennessee Subclass"):

All persons residing in Tennessee who purchased Hill's Products at various

times within the Relevant Time Period.

325.    Plaintiffs Donald Brown, Lisa Brown, Ciferni, Flinn, Heysquierdo, Hodnett, Holden, Kang, Kinnard, Moreno, Pham, Poole, Reed, and Wallace ("Texas Plaintiffs") also seek certification of the following state subclass ("Texas Subclass"):

All persons residing in Texas who purchased Hill's Products at various times

within the Relevant Time Period.

326.    Plaintiffs Flanders, Horne, Moody, and Tipton ("Utah Plaintiffs") also seek certification of the following state subclass ("Utah Subclass"):

All persons residing in Utah who purchased Hill's Products at various times

within the Relevant Time Period.

327.    Plaintiffs Angel Brown, O'Connell, Rhoten, and Tsiptsis ("Virginia Plaintiffs") also seek certification of the following state subclass ("Virginia Subclass"):

All persons residing in Virginia who purchased Hill's Products at various times

within the Relevant Time Period.

328.    Plaintiffs Howard and Krage ("Washington Plaintiffs") also seek certification of the

following state subclass ("Washington Subclass"):

> All persons residing in Washington who purchased Hill's Products at various
>
> times within the Relevant Time Period.

329.    Plaintiff Burgess ("West Virginia Plaintiff") also seeks certification of the following state subclass ("West Virginia Subclass"):

> All persons residing in West Virginia who purchased Hill's Products at various
>
> times within the Relevant Time Period.

330.    Plaintiffs Lovejoy, Patterson, and Tyborski ("Wisconsin Plaintiffs") also seek certification of the following state subclass ("Wisconsin Subclass"):

> All persons residing in Wisconsin who purchased Hill's Products at various times within
>
> the Relevant Time Period.

331.    Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; persons and entities that purchased Hill's Products for resale; the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and Class Counsel.

### *The Classes Satisfies the Rule 23 Requirements*

332.    Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiffs believe the members of the Class exceed thousands of persons, if not hundreds of thousands.

333.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among questions of law and fact common to the Class and are:

    a.    Whether Hill's Products contain excessive levels of vitamin D;

b.    Whether Hill's Products contain excessive vitamin D at levels high enough to injure and kill dogs;

c.    Whether Defendant's labeling, advertising, and marketing is false;

d.    Whether Defendant's labeling, advertising, and marketing is misleading;

e.    Whether Defendant's labeling, advertising, and marketing is deceptive;

f.    Whether Defendant breached warranties by making the representations above;

g.    Whether Defendant was unjustly enriched by making the representations and omissions above;

h.    Whether Defendant's actions as described above violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

i.    Whether the Hill's Products' value to Class Members is diminished, and consequently, the Products are worth substantially less than the premium prices paid for them because of the toxic level of vitamin D; and

j.    Whether Defendant's actions as described above violated various state consumer protection statutes.

334.    Plaintiffs' claims are typical of the claims of Class and the Subclasses because Plaintiffs and each member of the Class purchased Hill's Products, and suffered damages and a loss of money as a result of that purchase.

335.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

336.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by the individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this class action.

337.    Certification pursuant to Fed. R. Civ. 23(b)(1) is appropriate because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

338.    Certification pursuant to Fed. R. Civ. 23(b)(2) is appropriate because Defendant has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT 1

## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301, *et seq.*

339.    Plaintiffs and Class members repeat and reallege and incorporate by reference each allegation set forth above and further alleges as follows.

340.    Plaintiffs bring this Count individually and on behalf of the members of the Class against Defendant.

341.    Hill's Products are consumer products as defined in 15 U.S.C. § 2301(1).

342.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

343.    Plaintiffs purchased Hill's Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. § 2302(e) and 15 U.S.C. § 2310(d)(3)(A).

344.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

345.    In connection with the sale of Hill's Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products, among other things, "[s]upport[ ] a healthy immune system," "improve and lengthen quality of life," "can be used long-term," "[p]rotect[ ] vital kidney & heart function," "[s]upport your dog's natural ability to build lean muscle daily," and "meet[ ] the special nutritional needs of puppies and adult dogs." Additional written warranties as defined in 15 U.S.C. § 2301(6) issued by Defendant in connection with the sale of the Hill's Products were that "We only accept ingredients from suppliers whose facilities meet stringent quality standards," and that "each ingredient [is] examined to ensure its safety."

346.    Defendant breached these written warranties because the Hill's Products contained excessive and toxic levels of vitamin D harmful to pet health.

347.    By reason of Defendant's breach of the written warranties, Defendant violated the statutory rights due Plaintiffs and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiffs and Class Members.

348.    Within a reasonable time after Plaintiffs knew or should have known of such failure to conform, Plaintiffs gave Defendant notice thereof.

## COUNT 2

## BREACH OF EXPRESS WARRANTY

349.    Plaintiffs repeat and reallege each and every allegation above, as if set forth in full herein.

350.    Defendant sold, and Plaintiffs and members of the Class purchased Hill's Products.

351.    Defendant represented in its marketing, advertising, and promotion of Hill's Products that those products "[s]upport[ ] a healthy immune system," "improve and lengthen quality of life," "can be used long-term," "[p]rotect[ ] vital kidney & heart function," "[s]upport

your dog's natural ability to build lean muscle daily," and "meet[ ] the special nutritional needs of puppies and adult dogs." Defendant also represented that "We only accept ingredients from suppliers whose facilities meet stringent quality standards," and that "each ingredient [is] examined to ensure its safety."

352.    The Hill's Products did not conform to Defendant's representations and warranties in that they contained excessive and toxic levels of vitamin D harmful to pet health.

353.    Within a reasonable time after Plaintiffs knew or should have known of such failure to conform, Plaintiffs gave Defendant notice thereof.

354.    As a direct and proximate result of Defendant's breaches of its express warranty and failure of the Hill's Products to conform, Plaintiffs and members of the Class have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product and incurred veterinary expenses to treat their ill pets.

## COUNT 3

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

355.    Plaintiffs repeat and reallege each and every allegation above, as if set forth in full herein.

356.    Defendant sold and Plaintiffs and members of the Class purchased Hill's Products.

357.    When sold by Defendant, the Hill's Products were not merchantable, did not pass without objection in the trade under the label description, were not of fair average quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label because of the excessive and toxic levels of vitamin D.

358.    Within a reasonable time after Plaintiffs knew or should have known that the product was not fit for such purpose and/or was not otherwise merchantable as set forth above,

Plaintiffs gave Defendant notice thereof.

359.     As a direct result of the Hill's Products being unfit for such purpose and/or otherwise not merchantable, Plaintiffs and the members of the Class were damaged in that they did not receive the product as warranted and/or paid a premium for the product and incurred veterinary expenses to treat their ill pets.

**COUNT 4**

**UNJUST ENRICHMENT**

360.     Plaintiffs repeat the allegations of the foregoing paragraphs, as if fully set forth herein.

361.     Plaintiffs conferred benefits on Defendant by purchasing Hill's Products at a premium price.

362.     Defendant has knowledge of such benefits.

363.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of Hill's Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented, among other things, that its Hill's Products "[s]upport[ ] a healthy immune system," "improve and lengthen quality of life," "can be used long-term," "[p]rotect[ ] vital kidney & heart function," "[s]upport your dog's natural ability to build lean muscle daily," "meet[ ] the special nutritional needs of puppies and adult dogs," contains "ingredients from suppliers whose facilities meet stringent quality standards," and that "each ingredient [is] examined to ensure its safety" when, in fact, the Hill's Products contained excessive levels of vitamin D harmful to pet health, which caused injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for Hill's Products had the true facts been known.

364.     Because Defendant's retention of the non-gratuitous benefits conferred on it by

Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs

and Class Members for its unjust enrichment, as ordered by the Court.

## COUNT 5

## VIOLATIONS OF ALABAMA CONSUMER PROTECTION ACT,
### Ala. Code §§ 8-19-1, *et seq*.

365.    The Alabama Plaintiffs identified above, individually and on behalf of the Alabama

Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

366.    Hill's is a "person" as defined by Ala. Code § 8-19-3(5).

367.    Plaintiffs and the other Alabama Subclass members are "consumers" as defined by

Ala. Code § 8-19-3(2).

368.    Hill's received notice pursuant to Ala. Code § 8-19-10(e) concerning its wrongful

conduct as alleged herein by Plaintiffs and Alabama Subclass members.

369.    Hill's advertised, offered, or sold goods or services in Alabama, and engaged in

trade or commerce directly or indirectly affecting the people of Alabama.

370.    Hill's engaged in deceptive acts and practices in the conduct of trade or commerce,

in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, by, among other

things, representing that Hill's Products have, characteristics, ingredients, uses, benefits, or

qualities that they do not have, in violation of § 8-19-5(5).

371.    Hill's representations and omissions were material because they were likely to

deceive ordinary, reasonable consumers.

372.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and

Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses

of money or property, and monetary and non-monetary damages, including from not receiving the

benefit of their bargain in purchasing the Hill's Products.

373.     Hill's deceptive acts and practices caused substantial injury to Plaintiffs and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

374.     Plaintiffs and the Alabama Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper

### COUNT 6

### VIOLATIONS OF ALASKA CONSUMER PROTECTION ACT, Alaska Stat. §§ 45.50.471, *et seq.*

375.     The Alaska Plaintiff identified above, individually and on behalf of the Alaska Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

376.     Hill's advertised, offered, or sold goods or services in Alaska and engaged in trade or commerce directly or indirectly affecting the people of Alaska.

377.     Alaska Subclass members are "consumers" as defined by Alaska Stat. § 45.50.561(4).

378.     Hill's received notice pursuant to Alaska Stat. § 45.50.535 concerning its wrongful conduct as alleged herein by Plaintiff and Alaska Subclass members.

379.     Hill's engaged in unfair or deceptive acts and practices in the conduct of trade or commerce, in violation Alaska Stat. § 45.50.471(4), by, among other things, representing that Hill's Products have, characteristics, ingredients, uses, benefits, or qualities that they do not have. Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

380.     As a direct and proximate result of Hill's unfair and deceptive acts and practices, Plaintiff and Alaska Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain.

381.    Plaintiff and the Alaska Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) three times their actual damages or (b) statutory damages in the amount of $500; punitive damages; reasonable attorneys' fees and costs; injunctive relief; and any other relief that is necessary and proper.

## COUNT 7

## VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT,
## Ariz. Rev. Stat. §§ 44-1521, *et seq*.

382.    The Arizona Plaintiffs identified above, individually and on behalf of the Arizona Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

383.    Hill's is a "person" as defined by Ariz. Rev. Stat. § 44-1521(6).

384.    Hill's advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

385.    Hill's engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521(5)) in violation of Ariz. Rev. Stat. § 44-1522(A).

386.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

387.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

388.    Plaintiffs and Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 8

## ARKANSAS DECEPTIVE TRADE PRACTICES ACT,
### Ark. Code Ann. §§ 4-88-101, *et seq.*

389.    The Arkansas Plaintiffs identified above, individually and on behalf of the Arkansas Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

390.    Hill's is a "person" as defined by Ark. Code Ann. § 4-88-102(5).

391.    Hill's products and services are "goods" and "services" as defined by Ark. Code Ann. §§ 4-88-102(4) and (7).

392.    Hill's advertised, offered, or sold goods or services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

393.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

394.    Hill's engaged in acts of deception and false pretense in connection with the sale and advertisement of services in violation of Ark. Code Ann. § 4-88-1-8(1) and concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or omission in violation of Ark. Code Ann. § 4-88-1-8(2), and engaged in deceptive and unconscionable trade practices defined in Ark. Code Ann. § 4-88-107.

395.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

396.    As a direct and proximate result of Hill's unconscionable, unfair, and deceptive acts or practices and Plaintiffs and Arkansas Subclass members' reliance thereon, Plaintiffs and

Arkansas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines.

397.    Plaintiffs and the Arkansas Subclass members seek all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

<u>**COUNT 9**</u>

<u>**VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW,**</u>
<u>**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**</u>

398.    Plaintiffs repeat and realleges each and every allegation above, as if set forth in full herein.

399.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

400.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

401.    <u>Unlawful</u>:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

b.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

c.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.*; and

d.    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100, *et seq.*

402.    <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

403.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

404.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

405.    <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

406.    As set forth herein, Defendant's claims relating the ingredients stated on the Products' labeling and moreover Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as stated above, are false likely to mislead or deceive the public.

407.    Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

408.    Plaintiffs and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

409.    Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members.  Plaintiffs have suffered injury in fact as a result of Defendant's unlawful conduct.

410.    In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

411.    Plaintiffs and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT 10

## VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW,
## Cal. Bus. & Prof. Code § 17500 ("FAL")

412.    Plaintiffs repeat and realleges each and every allegation above, as if set forth in full herein.

413.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

414.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

415.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably as to Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as

stated above.

416.    Plaintiffs suffered injury in fact as a result of Defendant's actions as set forth herein because he purchased the Products in reliance on Defendant's false and misleading labeling claims concerning the Products', among other things, quality, ingredient supply, and product manufacturing and oversight, as stated above.

417.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

418.    Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

419.    As a result, Plaintiffs, the California Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

420.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of  and the California Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT 11

## VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.* ("CLRA")

421.    Plaintiffs repeat and realleges each and every allegation above, as if set forth in full herein.

422.    The CLRA prohibits deceptive practices in connection with the conduct of a

business that provides goods, property, or services primarily for personal, family, or household purposes.

423.    Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

424.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

425.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

426.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs provided a letter to Defendant with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices.  If Defendant does not thereafter correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

427.    Pursuant to California Civil Code § 1780, Plaintiffs seek injunctive relief, their

reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT 12

## VIOLATIONS OF COLORADO CONSUMER PROTECTION ACT, Colo. Rev. Stat. §§ 6-1-101, *et seq.*

428.    The Colorado Plaintiff identified above, individually and on behalf of the Colorado Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

429.    Hill's is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

430.    Hill's engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

431.    The Colorado Plaintiff and Colorado Subclass members, as well as the general public, are actual or potential consumers of the products and services offered by Hill's or successors in interest to actual consumers.

432.    Hill's engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1)(g), by, among other things, representing that Hill's Products are of a particular standard, quality, or grade, while it knew or should know that they are of another.

433.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

434.    As a direct and proximate result of Hill's deceptive trade practices, Colorado Subclass members suffered injuries to their legally protected interests.

435.    Hill's deceptive trade practices significantly impact the public, because Hill's is one of the largest dog food manufacturers in the country.

436.    The Colorado Plaintiff and Colorado Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Hill's bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 13

## VIOLATIONS OF CONNECTICUT TRADE PRACTICES ACT,
### Conn. Gen. Stat. §§ 42-110g, *et seq.*

437.    The Connecticut Plaintiff identified above, individually and on behalf of the Connecticut Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

438.    Hill's is a "person" as defined by Conn. Gen. Stat. § 42-110a(3).

439.    Hill's is engaged in "trade" or "commerce" as those terms are defined by Conn. Gen. Stat. § 42-110a(4).

440.    At the time of filing this Complaint, Plaintiff has sent notice to the Attorney General and Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c).  Plaintiff will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

441.    Hill's advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

442.    Hill's engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of the Conn. Gen. Stat. § 42-110b, by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines.

443.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiff and Connecticut Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

444.    Hill's deceptive acts and practices caused substantial, ascertainable injury to

Plaintiff and Connecticut Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

445.    Hill's violations of Connecticut law were done with reckless indifference to the Plaintiff and the Connecticut Subclass or was with an intentional or wanton violation of those rights.

446.    Plaintiff requests damages in the amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

## COUNT 14

## VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq.*

447.    The Florida Plaintiffs identified above, individually and on behalf of the Florida Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

448.    The Florida Plaintiffs and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

449.    Hill's advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

450.    Hill's engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

451.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

452.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

453.    Plaintiffs and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

**COUNT 15**

**VIOLATIONS OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**Ga. Code Ann. §§ 10-1-390, *et seq.***

454.    The Georgia Plaintiffs identified above, individually and on behalf of the Georgia Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

455.    The Georgia Plaintiffs and Georgia Subclass members are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

456.    Hill's received notice pursuant to Ga. Code Ann. § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiffs and Georgia Subclass members

457.    Hill's engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. § 10-1-372(a)(5) by, among other things, representing that Hill's Products have characteristics, ingredients, uses, or benefits that they do not have.Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

458.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

459.    Plaintiffs and Georgia Subclass members seek all relief allowed by law, including

injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

## COUNT 16

## VIOLATIONS OF IDAHO CONSUMER PROTECTION ACT, Idaho Code §§ 48-601, *et seq.*

460.    The Idaho Plaintiff identified above, individually and on behalf of the Idaho Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

461.    Hill's is a "person" as defined by Idaho Code § 48-602(1).

462.    Hill's conduct as alleged herein pertained to "goods" and "services" as defined by Idaho Code §§ 48-602(6) and (7).

463.    Hill's advertised, offered, or sold goods or services in Idaho and engaged in trade or commerce directly or indirectly affecting the people of Idaho.

464.    Hill's engaged in unfair and deceptive acts or practices, and unconscionable acts and practices, in the conduct of trade and commerce with respect to the sale and advertisement of goods and services, in violation of Idaho Code § 48-603(5) by, among other things, representing that Hill's Products have characteristics, ingredients, uses, or benefits that they do not have

465.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

466.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

467.    The Idaho Plaintiff and Idaho Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT 17

## VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. §§ 505, *et seq*.

468.    The Illinois Plaintiffs identified above, individually and on behalf of the Illinois Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

469.    Hill's is a "person" as defined by 815 Ill. Comp. Stat. § 505/1(c).

470.    The Illinois Plaintiffs and Illinois Subclass members are "consumers" as defined by 815 Ill. Comp. Stat. § 505/1(e).

471.    Hill's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).  Hill's conduct is described in full detail above.

472.    Hill's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2.

473.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

474.    The above unfair and deceptive practices and acts by Hill's were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

475.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

476.    The Illinois Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief,

and reasonable attorneys' fees and costs.

## COUNT 18

## VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 Ill. Comp. Stat. §§ 505, *et seq.*

477.    The Illinois Plaintiffs identified above, individually and on behalf of the Illinois Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

478.    Hill's is a "person" as defined by 815 Ill. Comp. Stat. § 510/1(5).

479.    Hill's engaged in deceptive trade practices in the conduct of its business, in violation of 815 I Ill. Comp. Stat. § 510/2(a) by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines.

480.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

481.    The above unfair and deceptive practices and acts by Hill's were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

482.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

483.    The Illinois Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT 19

## VIOLATIONS OF INDIANA DECEPTIVE CONSUMER SALES ACT, Ind. Code §§ 24-5-0.5-1, *et seq.*

484.    The Indiana Plaintiffs identified above, individually and on behalf of the Indiana Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

485.    Hill's is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

486.    Hill's is a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3) because it regularly engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(3)(A).

487.    Hill's engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

488.    Hill's acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

489.    The injury to consumers from Hill's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

490.    Hill's acts and practices were "abusive" for numerous reasons (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction; consumers lacked an understanding of the material risks and costs of a variety of their transactions; (c) because they took unreasonable advantage of consumers' inability to protect their own interests; consumers could not protect their interests due to the asymmetry in information between them and Hill's; (d) because Hill's took unreasonable advantage of

consumers' reasonable reliance that it was providing truthful and accurate information.

491.    Hill's also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b) by (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have and (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

492.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

493.    Hill's received notice pursuant to Ind. Code § 24-5-0.5-5(a) concerning its wrongful conduct as alleged herein by Plaintiffs and Indiana Subclass members. Hill's conduct includes incurable deceptive acts that Hill's engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

494.    As a direct and proximate result of Hill's uncured or incurable unfair, abusive, and deceptive acts or practices, the Plaintiffs and Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

495.    Hill's violations present a continuing risk to Plaintiffs and Indiana Subclass members as well as to the general public.

496.    The Indiana Plaintiffs and Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

**COUNT 20**

**VIOLATIONS OF IOWA'S PRIVATE RIGHT OF
ACTION FOR CONSUMER FRAUDS ACT,
Iowa Code §§ 714H, *et seq*.**

497.    The Iowa Plaintiffs identified above, individually and on behalf of the Iowa Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

498.    Hill's is a "person" as defined by Iowa Code § 714H.2(7).

499.    Plaintiffs and Iowa Subclass members are "consumers" as defined by Iowa Code § 714H.2(3).

500.    Hill's conduct described herein violates Iowa Code § 714H.3(2)(f) because it engaged in "[a]n act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." *See* Iowa Code § 714.16(1)(n). Hill's did this by advertising and promoting the health of its products and its high-quality supply chain so consumers would purchase its products. However, Hill's faulty supply chain lead to vitamin D poisioning of Plaintiffs' pets. Accordingly, Hill's engaged in unfair, deceptive. and unconscionable trade practices, in violation of the Iowa Private Right of Action for Consumer Frauds Act, as described throughout and herein.

501.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

502.    As a direct and proximate result of Hill's deceptive acts and practices, the Iowa Plaintiffs and Iowa Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products

503.    Plaintiffs have provided the requisite notice to the Iowa Attorney General, the office of which approved the filing of this class action lawsuit pursuant to Iowa Code § 714H.7.

504.    The Iowa Plaintiffs and Iowa Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT 21

### VIOLATIONS OF KANSAS CONSUMER PROTECTION ACT, Kan. Stat. Ann §§ 50-623, *et seq.*

505.    The Kansas Plaintiffs identified above, individually and on behalf of the Kansas Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

506.    Kan. Stat.Ann. §§ 50-623, *et seq.*, is to be liberally construed to protect consumers from suppliers who commit deceptive and unconscionable practices.

507.    The Plaintiffs and Kansas Subclass members are "consumers" as defined by Kan. Stat.Ann. § 50-624(b).

508.    The acts and practices described herein are "consumer transactions," as defined by Kan. Stat.Ann. § 50-624(c).

509.    Hill's is a "supplier" as defined by Kan. Stat.Ann. § 50-624(l).

510.    Hill's advertised, offered, or sold goods or services in Kansas and engaged in trade or commerce directly or indirectly affecting the people of Kansas.

511.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

512.    Hills engaged in deceptive acts and practices when it advetisied that its dog food was of one quality and turned out to be of another.  *See* Kan. Stat.Ann. § 50-626(b)(1)(D). Hill's also engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Kan. Stat.Ann. § 50-627 by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines,

knowingly taking advantage of the inability of Plaintiffs and the Kansas Subclass to reasonably protect their interests, due to their lack of knowledge (*see* Kan. Stat.Ann. § 50-627(b)(1)); and requiring Plaintiffs and the Kansas Subclass to enter into a consumer transaction on terms that Hill's knew were substantially one-sided in favor of Hill's (*see* Kan. Stat.Ann. § 50-627(b)(5)).

513.    The  Plaintiffs and the Kansas Subclass had unequal bargaining power with respect to their purchase and/or use of Hill's Products because of Hill's omissions and misrepresentations.

514.    The above unfair, deceptive, and unconscionable practices and acts by Hill's were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kansas Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

515.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

516.    The Plaintiffs and Kansas Subclass members seek all monetary and non-monetary relief allowed by law, including civil penalties or actual damages (whichever is greater), under Kan. Stat.Ann. §§ 50-634 and 50-636; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT 22

## VIOLATIONS OF KENTUCKY CONSUMER PROTECTION ACT, Ky. Rev. Stat. §§ 367.110, *et seq*.

517.    The Kentucky Plaintiffs identified above, individually and on behalf of the Kentucky Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

518.    Hill's is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

519.    Hill's advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. § 367.110(2).

520.    Hill's engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170, as described herein.

521.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

522.    The Kentucky Plaintiffs and Kentucky Subclass members' purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property as a result of Hill's unlawful acts and practices.

523.    The above unlawful acts and practices by Hill's were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

524.    As a direct and proximate result of Hill's deceptive acts and practices, the Kentucky Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

525.    The Kentucky Plaintiffs and Kentucky Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

### COUNT 23

### VIOLATIONS OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*

526.    The Louisiana Plaintiffs identified above, individually and on behalf of the Louisiana Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

527.    The Louisiana Plaintiffs and the Louisiana Subclass members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

528.    Plaintiffs and Louisiana Subclass members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

529.    Hill's engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

530.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

531.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

532.    Hill's unfair and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to the Kentucky Plaintiffs and Kentucky Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

533.    As a direct and proximate result of Hill's deceptive acts and practices, the Kentucky Plaintiffs and Kentucky Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

Plaintiffs and Louisiana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; treble damages for Hill's knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

## COUNT 24

### VIOLATIONS OF LOUISIANA REDHIBITION LAW
### La. Civ. Code Ann. art. 2520, *et seq.*

534.    The Louisiana Plaintiffs identified above, individually and on behalf of the Louisiana Subclass, repeat and re-alleges all previously alleged paragraphs, as if fully alleged herein.

535.    Hills was at all revelant times a "merchant" with respect to dog food.

536.    Hills has violated Louisiana's Redhibition Law, La. Civ. Code Ann. Art. 2520, et seq., by manufacturing and selling dog food with excessive vitamin D that caused dogs to become ill and die. Therefore, Hill's Products are not suitable for consumption by dogs in Louisiana.

537.    Hill's products were warranted as being in merchantable condition and being fit for the ordinary purpose for which dog food is used. However, as argued throughout *infra,* Hill's Products were sold in a condition that was not merchantable/or fit for their ordinary purpose in violation of the implied warranty.

538.    The manufacturing defect has made using Hill's Products dangerous. Hills had to issue a recall because dogs are becoming ill and/or dying.  Accordingly, Louisiana Plaintiffs and Subclass members would not have purchased Hill's Products had they known about the defect.

539.    As a direct and proximate result of Hill's conduct, Louisiana Plaintiffs and other members the Louisiana Subclass have been harmed in that they purchased Hill's Products they otherwise would not have.

540.    Louisiana Plaintiffs and the Louisiana Subclass members seek all monetary and

non-monetary relief allowed by law, including specifically damages for not receiving the benefit of their bargain as well as any available equitable relief. The amount of damages due will be proven at trial.

## COUNT 25

### VIOLATIONS OF MAINE UNFAIR TRADE PRACTICES ACT, Me. Rev. Stat. tit. 5 §§ 205-214, *et seq.*

541.    The Maine Plaintiff identified above, individually and on behalf of the Maine Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

542.    Hill's is a "person" as defined by Me. Rev. Stat. tit. 5 § 206(2).

543.    Hill's conduct as alleged herein related was in the course of "trade and commerce" as defined by Me. Rev. Stat. tit. 5 § 206(3).

544.    The Maine Plaintiff and Maine Subclass members purchased goods and/or services for personal, family, and/or household purposes.

545.    A demand for relief in the form substantially similar to that required by Me. Rev. Stat. tit. 5  § 213(1-A) was already sent at the commencement of this lawsuit but Hill's has not made a written tender of settlement or offer of judgment. Hill's engaged in unfair and deceptive trade acts and practices in the conduct of trade or commerce in violation of Me. Rev. Stat. tit. 5 § 207.

546.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

547.    As a direct and proximate result of Hill's deceptive acts and practices, the Maine Plaintiff and Maine Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

548.    The Maine Plaintiff and the Maine Subclass members seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive and other equitable relief, and attorneys' fees and costs.

## COUNT 26

## VIOLATIONS OF MAINE UNIFORM DECEPTIVE TRADE PRACTICES ACT, Me. Rev. Stat. tit. 10 §§ 1212, *et seq*.

549.    The Maine Plaintiff identified above, individually and on behalf of the Maine Subclass, repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

550.    Hill's is a "person" as defined by Me. Rev. Stat. tit. 10 § 1211(5).

551.    Hill's advertised, offered, or sold goods or services in Maine and engaged in trade or commerce directly or indirectly affecting the people of Maine.

552.    Hill's engaged in deceptive trade practices in the conduct of its business, in violation of Me. Rev. Stat. tit. 10 § 1212 by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines, representing that goods or services have characteristics that they do not have; representing that goods or services are of a particular standard, quality, or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in other conduct that creates a likelihood of confusion or misunderstanding.

553.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

554.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

555.    The Maine Subclass members are likely to be damaged by Hill's ongoing deceptive trade practices.

556.    The Maine Plaintiff and the Maine Subclass members seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive or other equitable relief, and attorneys' fees and costs.

## COUNT 27

### VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT,
### Md. Code Ann., Com. Law §§ 13-301, *et seq*.

557.    The Maryland Plaintiffs identified above, individually and on behalf of the Maryland Subclass, repeat and reallege all previously alleged paragraphs, as if fully alleged herein.

558.    Hill's is a person as defined by Md. Code Ann., Com. Law § 13-101(h).

559.    Hill's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined Md. Code Ann., Com. Law §§ 13-101(i) and 13-303.

560.    Maryland Subclass members are "consumers" as defined by Md. Code Ann., Com. Law § 13-101(c)(1).

561.    Hill's advertises, offers, or sells "consumer goods"" as defined by Md. Code Ann., Com. Law § 13-101(d).

562.    Hill's advertised, offered, or sold goods in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

563.    Hill's engaged in unfair and deceptive trade practices, in violation of Md. Code Ann., Com. Law § 13-301 by (a) making false or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c) representing that consumer goods  are of a particular standard, quality, or grade that they are not; and (d) failing to

state a material fact where the failure deceives or tends to deceive.

564.    Hill's engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods in violation of Md. Code Ann., Com. Law § 13-303.

565.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

566.    As a direct and proximate result of Hill's deceptive acts and practices, the Maryland Plaintiffs and Maryland Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

567.    The Maryland Plaintiffs and Maryland Subclass members seek all monetary and non-monetary relief allowed by law, including damages, injunctive relief, and attorneys' fees and costs.

### COUNT 28

### VIOLATIONS OF DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW
### Mass. Gen. Laws ch. 93a, § 1, *et seq.*

568.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

569.    The Massachusetts bring this action on behalf of themselves and the Massachusetts Subclass against all Defendants.

570.    Defendants, the Massachusetts Plaintiffs, and the Massachusetts Subclass are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

571.    Hill's engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

572.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or

practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

573.    In selling their products, Hills touted the quality of their supply chain and food safety, when in reality their Products were contaminated with excessive levels of Vitamin D.

574.    The Massachusetts Plaintiffs and Massachusetts Subclass suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations regarding its Products safety. Hill's violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

575.    As a direct and proximate result of Defendants' violations of the Massachusetts Act, the Massachusetts Plaintiffs and the Massachusetts Subclass have suffered injury-in-fact and/or actual damage.

576.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and the Massachusetts Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts Class member.

577.    On March 8, 2019, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Hill's failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which the Massachusetts Plaintiffs and the Massachusetts Class are entitled.

## COUNT 29

### VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT, Mich. Comp. Laws Ann. §§ 445.903, *et seq*.

578.    The Michigan Plaintiffs identified above, individually and on behalf of the Michigan Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged

herein.

579.    The Michigan Plaintiffs and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.902(d).

580.    Hill's offered and sold goods in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.902(g).

581.    Hill's engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1) by (a) representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

582.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

583.    As a direct and proximate result of Hill's deceptive acts and practices, the Michigan Plaintiffs and Michigan Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

584.    The Michigan Plaintiffs and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and any other

relief that the Court deems just and proper.

## COUNT 30

## VIOLATIONS OF MINNESOTA CONSUMER FRAUD ACT,
### Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*

585.    The Minnesota Plaintiffs identified above, individually and on behalf of the Minnesota Subclass, repeat and realleges all previously alleged paragraphs, as if fully alleged herein.

586.    The Minnesota Plaintiffs and members of the Minnesota Subclass are each a "person" as defined by Minn. Stat. § 325F.68(3).

587.    Hill's goods, services, commodities, and intangibles (specifically, its Hill's Products) are "merchandise" as defined by Minn. Stat. § 325F.68(2).

588.    Hill's engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

589.    Hill's engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

590.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

591.    Hill's intended to mislead Plaintiffs and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

592.    Hill's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used Hill's Products.

593.    As a direct and proximate result of Hill's deceptive acts and practices, the Minnesota Plaintiffs and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages,

including from not receiving the benefit of their bargain in purchasing the Hill's Products.

594.     The Minnesota Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including damages, injunctive or other equitable relief, and attorneys' fees, disbursements, and costs.

## COUNT 31

## VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT, Minn. Stat. §§ 325D.43, *et seq.*

595.     The Minnesota Plaintiffs identified above, individually and on behalf of the Minnesota Subclass, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

596.     By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Hill's violated Minn. Stat. § 325D.44, including the following provisions: representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1) and (5); representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1) and (7); and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1) and (13).

597.     Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

598.     As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

599.    Plaintiffs and Minnesota Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and attorneys' fees and costs.

### COUNT 32

### VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT, Miss. Code Ann. §§ 75-24-1, *et seq.*

1.    The Mississippi Plaintiffs identified above, individually and on behalf of the Mississippi Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

2.    Hill's is a "person," as defined by Miss. Code Ann. § 75-24-3.

3.    Hill's advertised, offered, or sold goods or services in Mississippi and engaged in trade or commerce directly or indirectly affecting the people of Mississippi, as defined by Miss. Code Ann. § 75-24-3.

4.    Prior to filing suit, Plaintiffs made reasonable attempts to resolve Plaintiffs' claims via informal dispute resolution processes; however, such processes were unsuccessful.

5.    The above-described conduct violated Miss. Code Ann. § 75-24-5(2)  by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product lines, representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising goods or services with intent not to sell them as advertised.

6.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

7.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and

Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

8.       Hill's violations present a continuing risk to the Mississippi Plaintiffs and Mississippi Subclass members as well as to the general public as, *inter alia*, its omissions and misrepresentations have not been corrected.

9.       The Mississippi Plaintiffs and Mississippi Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution and other relief under Miss. Code Ann. § 75-24-11, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

## COUNT 33

## VIOLATIONS OF MISSOURI MERCHANDISE PRACTICES ACT,
## Mo. Rev. Stat. §§ 407.010, *et seq.*

10.      The Missouri Plaintiffs identified above, individually and on behalf of the Missouri Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

11.      Hill's is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

12.      Hill's advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

13.      Plaintiffs and Missouri Subclass members purchased or leased goods or services primarily for personal, family, or household purposes.

14.      Hill's engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

15.     Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

16.     As a direct and proximate result of Hill's deceptive acts and practices, the Missouri Plaintiffs and Missouri Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

17.     The Missouri Plaintiffs and Missouri Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any other appropriate relief.

## COUNT 34

### VIOLATIONS OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT, Mont. Code Ann. §§ 30-14-101, *et seq.*

18.     The Montana Plaintiff identified above, individually and on behalf of the Montana Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

19.     Hill's is a "person" as defined by Mont. Code Ann. § 30-14-102(6).

20.     The Montana Plaintiff and Montana Subclass members are "consumers" as defined by Mont. Code Ann. § 30-14-102(1).

21.     Hill's advertised, offered, or sold goods or services in Montana and engaged in trade or commerce directly or indirectly affecting the people of Montana, as defined by Mont. Code Ann. § 30-14-102(8).

22.     Hill's engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation Mont. Code Ann. § 30-14-103, as described herein.

23.     Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

24.    Hill's acts described above are unfair and offend public policy; they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

25.    As a direct and proximate result of Hill's unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, the Montana Plaintiff and Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

26.    The Montana Plaintiff and Montana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $500, treble damages, restitution, attorneys' fees and costs, injunctive relief, and other relief that the Court deems appropriate.

## COUNT 35

## VIOLATIONS OF NEBRASKA CONSUMER PROTECTION ACT, Neb. Rev. Stat. §§ 59-1601, *et seq*.

27.    The Nebraska Plaintiff identified above, individually and on behalf of the Nebraska Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

28.    The Nebraska Plaintiff and Nebraska Subclass members are each a "person" as defined by Neb. Rev. Stat. § 59-1601(1).

29.    Hill's advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska, as defined by Neb. Rev. Stat. § 59-1601.

30.    Hill's engaged in unfair and deceptive acts and practices in conducting trade and commerce, in violation of Neb. Rev. Stat. § 59-1602, as described herein.

31.    Hill's representations and omissions were material because they were likely to

deceive reasonable consumers.

32.     As a direct and proximate result of Hill's unfair and deceptive acts and practices, Plaintiff and Nebraska Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

33.     Hill's unfair and deceptive acts and practices complained of herein affected the public interest, including the large percentage of Nebraskans who have purchased and/or used Hill's Products.

34.     The Nebraska Plaintiff and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, the greater of either (1) actual damages or (2) $1,000, civil penalties, and reasonable attorneys' fees and costs.

## COUNT 36

### VIOLATIONS OF NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT, Neb. Rev. Stat. §§ 87-301, *et seq.*

35.     The Nebraska Plaintiff identified above, individually and on behalf of the Nebraska Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

36.     The Nebraska Plaintiff and Nebraska Subclass members are "persons" as defined by Neb. Rev. Stat. § 87-301(19).

37.     Hill's advertised, offered, or sold goods or services in Nebraska and engaged in trade or commerce directly or indirectly affecting the people of Nebraska.

38.     Hill's engaged in deceptive trade practices in the course of its business, in violation of Neb. Rev. Stat. §§ 87-302(a)(5),(8) and (10) by representing that goods and services have characteristics, uses, benefits, or qualities that they do not have; representing that goods and services are of a particular standard, quality, or grade if they are of another; and advertising its

goods and services with intent not to sell them as advertised and in a manner calculated or tending to mislead or deceive.

39.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

40.    Hill's intended to mislead the Nebraska Plaintiff and Nebraska Subclass members and induce them to rely on its misrepresentations and omissions.

41.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

42.    Hill's deceptive trade practices complained of herein affected consumers at large, including the large percentage of Nebraskans who purchased and/or used Hill's Products.

43.    The Nebraska Plaintiff and Nebraska Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, civil penalties, and attorneys' fees and costs.

## COUNT 37

## VIOLATIONS OF NEVADA DECEPTIVE TRADE PRACTICES ACT, Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*

44.    The Nevada Plaintiff identified above, individually and on behalf of the Nevada Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

45.    Hill's advertised, offered, or sold goods or services in Nevada and engaged in trade or commerce directly or indirectly affecting the people of Nevada.

46.    Hill's engaged in deceptive trade practices in the course of its business or occupation, in violation of Nev. Rev. Stat. §§ 598.0915 and 598.0923 by knowingly making a false

representation as to the characteristics, uses, and benefits of goods or services for sale in violation of Nev. Rev. Stat. § 598.0915(5); representing that goods or services for sale are of a particular standard, quality, or grade when Hill's knew or should have known that they are of another standard, quality, or grade in violation of Nev. Rev. Stat. § 598.0915(7); advertising goods or services with intent not to sell them as advertised in violation of Nev. Rev. Stat § 598.0915(9); failing to disclose a material fact in connection with the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(2); and violating state and federal statutes or regulations relating to the sale of goods or services in violation of Nev. Rev. Stat. § 598.0923(A)(3).

47.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

48.    Had Hill's disclosed to Plaintiff and Subclass members material facts, including but not limited to, that in designing its Hill's Products, it failed to take measures to protect confidential information from attacks by unauthorized users while knowing that its Hill's Products were vulnerable to such attacks, and was otherwise engaged in deceptive, common business practices, Hill's would have been unable to continue in business and it would have been forced to disclose the uniform Defects in its Hill's Products.  Instead, Hill's represented that its Hill's Products were continually improving in speed and performed better than other processors on the market. Plaintiff and the Subclass members acted reasonably in relying on Hill's misrepresentations and omissions, the truth of which they could not have discovered.

49.    Hill's acted intentionally, knowingly, and maliciously to violate Nevada's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and Nevada Subclass members' rights.

50.    As a direct and proximate result of Hill's deceptive acts and practices, the Nevada Plaintiff and Nevada Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including

from not receiving the benefit of their bargain in purchasing the Hill's Products.

51.    The Nevada Plaintiff and Nevada Subclass members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, and attorneys' fees and costs.

**COUNT 38**

**VIOLATIONS OF NEW HAMPSHIRE CONSUMER PROTECTION ACT,
N.H. Rev. Stat. Ann. §§ 358-A, *et seq*.**

52.    The New Hampshire Plaintiff identified above, individually and on behalf of the New Hampshire Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

53.    Hill's is a "person" under the New Hampshire Consumer Protection statute.

54.    Hill's advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H. Rev. Stat. Ann. § 358-A:1.

55.    Hill's engaged in unfair and deceptive acts or practices in the ordinary conduct of its trade or business, in violation of N.H. Rev. Stat. Ann. § 358-A:2 by making misrepresentations and false statements concerning the nutritional advantage of the Science Diet and Prescription Diet product line; representing that its goods or services have characteristics, uses, or benefits that they do not have in violation of N.H. Rev. Stat. Ann. § 358-A:2.V; representing that its goods or services are of a particular standard or quality if they are of another in violation of N.H. Rev. Stat. Ann.. § 358-A:2.VII; and advertising its goods or services with intent not to sell them as advertised in violation of N.H. Rev. Stat. Ann. § 358-A:2.IX.

56.    Hill's representations and omissions were material because they were likely to

deceive reasonable consumers.

57.     Hill's acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded Plaintiff and New Hampshire Subclass members' rights.  Hill's acts and practices went beyond the realm of strictly private transactions.

58.     As a direct and proximate result of Hill's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

59.     Plaintiff and New Hampshire Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, equitable relief (including injunctive relief), restitution, civil penalties, and attorneys' fees and costs.

## COUNT 39

### VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT, N.J. Stat. Ann. §§ 56:8-1, *et seq.*

60.     The New Jersey Plaintiffs identified above, individually and on behalf of the New Jersey Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

61.     Hill's is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

62.     Hill's sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

63.     The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

64.     Hill's representations and omissions were material because they were likely to

deceive reasonable consumers.

65.    As a direct and proximate result of Hill's deceptive acts and practices, the New Jersey Plaintiffs and New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

66.    The New Jersey Plaintiffs and New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs

## COUNT 40

### VIOLATIONS OF NEW MEXICO UNFAIR PRACTICES ACT, N.M. Stat. Ann. §§ 57-12-2, *et seq.*

67.    The New Mexico Plaintiff identified above, individually and on behalf of the New Mexico Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

68.    Hill's is a "person" as meant by N.M. Stat. Ann. § 57-12-2.

69.    Hill's was engaged in "trade" and "commerce" as meant by N.M. Stat. Ann. § 57-12-2(C) when engaging in the conduct alleged.

70.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2, *et seq.*, prohibits both unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce.

71.    Hill's engaged in unconscionable, unfair, and deceptive acts and practices in connection with the sale of goods or services in the regular course of its trade or commerce, including the following: knowingly representing that its goods and services have characteristics, benefits, or qualities that they do not have, in violation of N.M. Stat. Ann. § 57-12-2(D)(5);

knowingly representing that its goods and services are of a particular standard or quality when they are of another in violation of N.M. Stat. Ann. § 57-12-2(D)(7); knowingly using exaggeration, innuendo, or ambiguity as to a material fact or failing to state a material fact where doing so deceives or tends to deceive in violation of N.M. Stat. Ann. § 57-12-2(D)(14); taking advantage of the lack of knowledge, experience, or capacity of its consumers to a grossly unfair degree to Plaintiff's and the New Mexico Subclass' detriment in violation of N.M. Stat. Ann. § 57-2-12(E)(1); and performing these acts and practices in a way that results in a gross disparity between the value received by Plaintiff and the New Mexico Subclass and the price paid, to their detriment, in violation of N.M. Stat. Ann. § 57-2-12(E)(2).

72.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

73.    As a direct and proximate result of Hill's deceptive acts and practices, the New Mexico Plaintiff and New Mexico Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

74.    The New Mexico Plaintiff and New Mexico Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages or statutory damages of $100 (whichever is greater), treble damages or statutory damages of $300 (whichever is greater), and reasonable attorneys' fees and costs.

## COUNT 41

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
### N.Y. Gen. Bus. Law §§ 349, *et seq.*

75.    The New York Plaintiffs identified above, individually and on behalf of the New York Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

76.     Hill's engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

77.     Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

78.     Hill's acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded the New York Plaintiffs and New York Subclass members' rights.

79.     As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

80.     Hill's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of New Yorkers who purchased and/or used Hill's Products.

81.     The above deceptive and unlawful practices and acts by Hill's caused substantial injury to the New York Plaintiffs and New York Subclass members that they could not reasonably avoid.

82.     Plaintiffs and New York Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## COUNT 42

## VIOLATIONS OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
## N.C. Gen. Stat. §§ 75-1.1, *et seq.*

83.    All paragraphs of this complaint are incorporated herein as if fully restated.

84.    At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

85.    The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

86.    Defendant's false, misleading and deceptive statements and representations of fact were and are directed to consumers.

87.    Defendant's false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

88.    Defendant's false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest

89.    The North Carolina Plaintiffs and the North Carolina Subclass have been injured because: (a) they would not have purchased Hill's Products had they known that the products in fact contained excessive levels of vitamin D; (b) they paid a price premium for Hill's Products based on Defendant's false and misleading statements; and (c) the Hill's Products did not have the characteristics and benefits promised because they contained excessive vitamin D.

90.    As a result of Defendant's false, misleading and deceptive statements and representations of fact Plaintiffs have suffered economic injuries.

91.    The North Carolina Plaintiffs and the North Carolina Subclass suffered an ascertainable loss caused by Defendant's misrepresentations because they paid more for Hill's Products than they would have had they known the truth about the product.

92.    The above-described conduct violated N.C. Gen. Stat. § 75-1.19(a), including:

a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c.   Advertising goods or services with intent not to sell them as advertised.

93.   As a result, the North Carolina Plaintiffs and the North Carolina Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Hill's Products or the difference in value between Hill's Products as advertised and Hill's Products as actually sold.

94.   The North Carolina Plaintiffs and the North Carolina Subclass the Class suffered actual injury as a result of Defendants' unfair actions. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs.

95.   Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

96.   The North Carolina Plaintiffs and each member of the North Carolina Subclass have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action

## COUNT 43

### VIOLATIONS OF OHIO ONSUMER SALES PRACTICES ACT, Ohio Rev. Code Ann. §§ 1345.01, *et seq*.

97.   The Ohio Plaintiffs identified above, individually and on behalf of the Ohio Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

98.   The Ohio Plaintiffs and the Ohio Subclass members are "persons," as defined by

Ohio Rev. Code Ann. § 1345.01(B).

99.    Hill's was a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code Ann. § 1345.01(A) and (C).

100.    Hill's advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

101.    Hill's engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. § 1345.02 by representing that its goods, services, and intangibles had performance characteristics, uses, and benefits that it did not have, in violation of Ohio Rev. Code Ann. § 1345.02(B)(1); and representing that its goods, services, and intangibles were of a particular standard or quality when they were not, in violation of Ohio Rev. Code Ann. § 1345(B)(2).

102.    Hill's engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code Ann. § 1345.03 by knowingly taking advantage of the inability of Plaintiffs and the Ohio Subclass to reasonably protect their interest because of their ignorance of the issues discussed herein (Ohio Rev. Code Ann. § 1345.03(B)(1)); and requiring the Ohio Plaintiffs and the Ohio Subclass to enter into a consumer transaction on terms that Hill's knew were substantially one-sided in favor of Hill's (Ohio Rev. Code Ann. § 1345.03(B)(5)).

103.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

104.    Hill's unfair, deceptive, and unconscionable acts and practices complained of herein affected the public interest, including the thousands of Ohio residents who purchased and/or used Hill's Products.

105.    As a direct and proximate result of Hill's deceptive acts and practices, the Ohio Plaintiffs and the Ohio Subclass have suffered and will continue to suffer injury, ascertainable

losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

106.   The Ohio Plaintiffs and the Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

## COUNT 44

### VIOLATIONS OF OHIO DECEPTIVE TRADE PRACTICES ACT,
### Ohio Rev. Code Ann. §§ 4165.01, *et seq.*

107.   The Ohio Plaintiffs identified above, individually and on behalf of the Ohio Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

108.   Hill's, Plaintiffs, and Ohio Subclass members are a "person," as defined by Ohio Rev. Code Ann. § 4165.01(D).

109.   Hill's advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

110.   Hill's engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code Ann. § 4165.02 by representing that its goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code Ann. § 4165.02(A)(7); representing that its goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code Ann. § 4165.02(A)(9); and advertising its goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code Ann. § 4165.02(A)(11).

111.   Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

112.   As a direct and proximate result of Hill's deceptive acts and practices, the Ohio

Plaintiffs and Ohio Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

113.    The Ohio Plaintiffs and Ohio Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

## COUNT 45

### VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT,
### Okla. Stat. tit. 15, §§ 751, *et seq*.

114.    The Oklahoma Plaintiffs identified above, individually and on behalf of the Oklahoma Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

115.    Hill's is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

116.    Hill's advertisements, offers of sales, sales, and distribution of goods, services, and other things of value constituted "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

117.    Hill's, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following: making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5); representing, knowingly or with reason to know, that the subjects of its consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7); advertising, knowingly or with reason to know, the subjects of its consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753(8); committing unfair trade practices that offend established public policy and was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as

defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

118.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

119.    The above unlawful practices and acts by Hill's were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to the Oklahoma Plaintiffs and Oklahoma Subclass.

120.    As a direct and proximate result of Hill's deceptive acts and practices, the Oklahoma Plaintiffs and Oklahoma Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

121.    The Oklahoma Plaintiffs and Oklahoma Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs.

## COUNT 46

## VIOLATIONS OF OREGON UNLAWFUL TRADE PRACTICES ACT, Or. Rev. Stat. §§ 646.608, *et seq.*

122.    The Oregon Plaintiff identified above, individually and on behalf of the Oregon Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

123.    Hill's is a "person," as defined by Or. Rev. Stat. § 646.605(4).

124.    Hill's engaged in the sale of "goods and services," as defined by Or. Rev. Stat. § 646.605(6)(a).

125.    Hill's sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

126.    Hill's advertised, offered, or sold goods or services in Oregon and engaged in trade or commerce directly or indirectly affecting the people of Oregon.

127.    Hill's engaged in unlawful practices in the course of its business and occupation, in violation of Or. Rev. Stat. § 646.608, included the following: representing that its goods and services have approval, characteristics, uses, benefits, and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e); representing that its goods and services are of a particular standard or quality if they are of another, in violation of Or. Rev. Stat. § 646.608(1)(g); advertising its goods or services with intent not to provide them as advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and concurrent with tender or delivery of its goods and services, failing to disclose any known material Defect, in violation of Or. Rev. Stat. § 646.608(1)(t).

128.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

129.    As a direct and proximate result of Hill's deceptive acts and practices, the Oregon Plaintiffs and Oregon Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

130.    The Oregon Plaintiff and Oregon Subclass members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages or statutory damages of $200 per violation (whichever is greater), punitive damages, and reasonable attorneys' fees and costs.

## COUNT 47

### VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq*.

131.    The Pennsylvania Plaintiffs identified above, individually and on behalf of the

Pennsylvania Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

132.    Hill's is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

133.    The Pennsylvania Plaintiffs and Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

134.    Hill's engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following: representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201-2(4)(vii)); and advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

135.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

136.    As a direct and proximate result of Hill's deceptive acts and practices, the Pennsylvania Plaintiffs and Pennsylvania Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

137.    The Pennsylvania Plaintiffs and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

**COUNT 48**

## VIOLATIONS OF RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT,
## R.I. Gen. Laws §§ 6-13.1, *et seq*.

138.    The Rhode Island Plaintiffs identified above, individually and on behalf of the Rhode Island Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

139.    The Rhode Island Plaintiffs and Rhode Island Subclass members are each a "person," as defined by R.I. Gen. Laws § 6-13.1-1(3).

140.    The Rhode Island Plaintiffs and Rhode Island Subclass members members purchased goods and services for personal, family, or household purposes.

141.    Hill's advertised, offered, or sold goods or services in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. Gen. Laws § 6-13.1-1(5).

142.    Hill's engaged in unfair and deceptive acts and practices, in violation of R.I. Gen. Laws § 6-13.1-2 by representing that its goods and services have characteristics, uses, and benefits that they do not have (R.I. Gen. Laws § 6-13.1-52(6)(v)); representing that its goods and services are of a particular standard or quality when they are of another (R.I. Gen. Laws § 6-13.1-52(6)(vii)); advertising goods or services with intent not to sell them as advertised (R.I. Gen. Laws § 6-13.1-52(6)(ix)); engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. Gen. Laws § 6-13.1-52(6)(xii)); engaging in any act or practice that is unfair or deceptive to the consumer (R.I. Gen. Laws § 6-13.1-52(6)(xiii)); and using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. Gen. Laws § 6-13.1-52(6)(xiv)).

143.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

144.     As a direct and proximate result of Hill's deceptive acts and practices, the Rhode Island Plaintiffs and Rhode Island Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

145.     Plaintiff and Rhode Island Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $200 per Subclass Member (whichever is greater), punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs.

## COUNT 49

## VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT, S.C. Code Ann. §§ 39-5-10, *et seq*.

146.     The South Carolina Plaintiffs identified above , individually and on behalf of the South Carolina Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

147.     Hill's is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

148.     South Carolina's Unfair Trade Practices Act (SC UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

149.     Hill's advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

150.     Hill's acts and practices had, and continue to have, the tendency or capacity to deceive.

151.     Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

152.    Hill's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

153.    Hill's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

154.    Hill's violations present a continuing risk to the South Carolina Plaintiffs and South Carolina Subclass members as well as to the general public.

155.    As a direct and proximate result of Hill's deceptive acts and practices, the South Carolina Plaintiffs and South Carolina Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

156.    The South Carolina Plaintiffs and South Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses, treble damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 50

### VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977
### Tenn. Code Ann. § 47-18-101, *et seq.*

157.    All paragraphs of this complaint are incorporated herein as if fully restated.

158.    At all times relevant herein, Defendants were engaged in commerce in the State of Tennessee.

159.    At all times relevant herein, Defendants were engaged in commerce in the State of Tennessee.

160.    The conduct of Defendants as set forth herein is unethical, oppressive, unscrupulous, and substantially injurious to the consumers Tennessee; and has the capacity and tendency to deceive the average consumer.

161.    The Tennessee Plaintiffs and the Tennessee State Class members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

162.    Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

163.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

164.    Defendant's false, misleading and deceptive statements and representations of fact that were and are directed to consumers.

165.    Defendant's false, misleading and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

166.    Defendant's false, misleading and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

167.    Plaintiffs and the Class have been injured because: (a) they would not have purchased Hill's Products had they known that the products in fact contained excessive levels of vitamin D; (b) they paid a price premium for Hill's Products based on Defendant's false and misleading statements; and (c) the Hill's Products did not have the characteristics and benefits promised because they contained excessive vitamin D.

168.    As a result of Defendant's false, misleading and deceptive statements and representations of fact Plaintiffs have suffered economic injuries.

169.    Plaintiffs and the Class suffered an ascertainable loss caused by Defendant's misrepresentations because they paid more for Hill's Products than they would have had they known the truth about the product.

170.    The above-described conduct violated Tenn. Code § 47-18- 104, including:

a.      causing likelihood of confusion or of misunderstanding as to the approval or certification of the goods;

b.      representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

c.      representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

d.      advertising goods or services with intent not to sell them as advertised; and

e.      engaging in other conduct which created a likelihood of confusion or of misunderstanding.

171.    As a result, Plaintiffs have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Hill's Products or the difference in value between Hill's Products as advertised and Hill's Products as actually sold.

172.    Plaintiffs and members of the Class suffered actual injury as a result of Defendants' unfair actions.

173.    Pursuant to Tenn. Code §§ 47-18-109, 47-18-109, and 47-18-109(a)(3), the Tennessee Plaintiffs and the Tennessee State Class members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and reasonable attorneys' fees and costs, and any other just and proper relief proscribed by the Tennessee Consumer Protection Act.

174.    The Tennessee Plaintiffs and the Tennessee State Class members have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

## COUNT 51

### VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT,
### Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*

175.    The Texas Plaintiffs identified above, individually and on behalf of the Texas Subclass, repeats and realleges all previously alleged paragraphs, as if fully alleged herein.

176.    Hill's is a "person," as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

177.    The Texas Plaintiffs and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code Ann. § 17.45(4).

178.    Hill's advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code Ann. § 17.45(6).

179.    Hill's engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code Ann. § 17.46(b) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, if they are of another; and advertising goods or services with intent not to sell them as advertised.

180.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

181.    Hill's engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). Hill's engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

182.    Consumers, including Plaintiffs and Texas Subclass members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Hill's.

183.    As a direct and proximate result of Hill's deceptive acts and practices, The Texas

Plaintiffs and the Texas Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

184.   Hill's violations present a continuing risk to the Texas Plaintiffs and the Texas Subclass members as well as to the general public.

185.   Hill's received notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning its wrongful conduct as alleged herein by Plaintiffs and Texas Subclass members. Plaintiffs and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT 52

## VIOLATIONS OF UTAH CONSUMER SALES PRACTICES ACT,
### Utah Code Ann. §§ 13-11-1, *et seq.*

186.   The Utah Plaintiffs identified above, individually and on behalf of the Utah Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

187.   Hill's is a "person," as defined by Utah Code Ann. § 13-11-1(5).

188.   Hill's is a "supplier," as defined by Utah Code Ann. § 13-11-1(6), because it regularly solicits, engages in, or enforces "consumer transactions," as defined by Utah Code Ann. § 13-11-1(2).

189.   Hill's engaged in deceptive and unconscionable acts and practices in connection with consumer transactions, in violation of Utah Code Ann. § 13-11-4 and § 13-11-5, as described herein.

190.   Hill's representations and omissions were material because they were likely to

deceive reasonable consumers.

191.    Hill's intentionally or knowingly engaged in deceptive acts or practices, violating Utah Code Ann. § 13-11-4(2) by: indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; indicating that the subject of a consumer transaction will be supplied in greater quantity (e.g., more data security) than the supplier intends.

192.    Hill's engaged in unconscionable acts and practices that were oppressive and led to unfair surprise, as shown in the setting, purpose, and effect of those acts and practices.

193.    In addition, there was an overall imbalance in the obligations and rights imposed by the consumer transactions in question, based on the mores and industry standards of the time and place where they occurred. There is a substantial imbalance between the obligations and rights of consumers, such as Plaintiffs and the Utah Subclass, who purchased Hill's Products based upon the publicly-available information in the marketplace.

194.    Hill's acts and practices were also procedurally unconscionable because consumers, including Plaintiffs and the Utah Subclass, had no practicable option but to purchase Hill's Products based upon publicly-available information, despite Hill's omissions and misrepresentations.

195.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

196.    Hill's violations present a continuing risk to the Utah Plaintiffs and the Utah

Subclass members as well as to the general public.

197.    The Utah Plaintiffs and the Utah Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages of $2,000 per violation, amounts necessary to avoid unjust enrichment, under Utah Code Ann. §§ 13-11-19, *et seq.*, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT 53

## VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT, Va. Code Ann. §§ 59.1-196, *et seq*.

198.    The Virginia Plaintiffs identified above, individually and on behalf of the Virginia Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

199.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

200.    Hill's is a "person" as defined by Va. Code Ann. § 59.1-198.

201.    Hill's is a "supplier," as defined by Va. Code Ann. § 59.1-198.

202.    Hill's engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198. Hill's advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

203.    Hill's engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

204.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

205.    The above-described deceptive acts and practices also violated the following provisions of Va. Code Ann. § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

206.    As a direct and proximate result of Hill's deceptive acts and practices, the Virginia Plaintiffs and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

207.    Hill's violations present a continuing risk to Plaintiffs and Virginia Subclass members as well as to the general public.

208.    The Virginia Plaintiffs and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT 54

### VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT,
### Wash. Rev. Code Ann. §§ 19.86.020, *et seq*.

209.    The Washington Plaintiffs identified above, individually and on behalf of the Washington Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

210.    Hill's is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

211.    Hill's advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash.

Rev. Code Ann. § 19.86.010 (2).

212.    Hill's engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, as described herein.

213.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

214.    Hill's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons. Further, its conduct affected the public interest, including the at least hundreds of thousands of Washingtonians affected by Hill's deceptive business practices.

215.    As a direct and proximate result of Hill's deceptive acts and practices, the Washington Plaintiffs and Washington Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products

216.    The Washington Plaintiffs and Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT 55

## VIOLATIONS OF WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT, W. Va. Code §§ 46A-6-101, *et seq*.

217.    The West Virginia Plaintiff identified above, individually and on behalf of the West Virginia Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

218.    The West Virginia Plaintiff and West Virginia Subclass members are "consumers,"

as defined by W. Va. Code § 46A-6-102(2).

219. Hill's engaged in "consumer transactions," as defined by W. Va. Code § 46A-6-102(2).

220. Hill's advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

221. Hill's received notice pursuant to W. Va. Code § 46A-6-106(c) concerning its wrongful conduct as alleged herein by Plaintiff and West Virginia Subclass members. Hill's engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, as described herein.

222. Hill's unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another; advertising goods or services with intent not to sell them as advertised; engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any manner, statements and representations with regard to the sale of goods, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

223.    Hill's unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

224.    Hill's acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

225.    The injury to consumers from Hill's conduct was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

226.    Consumers could not have reasonably avoided injury because Hill's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers, Hill's created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

227.    Hill's business practices had no countervailing benefit to consumers or to competition.

228.    Hill's acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Hill's made representations or omissions of material facts that misled or were likely to mislead reasonable consumers, including the West Virginia Plaintiff and West Virginia Subclass members.

229.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

230.    Hill's acted intentionally, knowingly, and maliciously to violate West Virginia's Consumer Credit and Protection Act, and recklessly disregarded West Virginia Plaintiff and West Virginia Subclass members' rights. Hill's unfair and deceptive acts and practices were likely to cause serious harm, and Hill's knew that its deceptive acts would cause harm based upon its business practices and exclusive knowledge of the omissions and misrepresentations herein.

231.    As a direct and proximate result of Hill's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

232.    Hill's violations present a continuing risk to the West Virginia Plaintiff and West Virginia Subclass members as well as to the general public.

233.    Plaintiff and West Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a), restitution, injunctive and other equitable relief, punitive damages, and reasonable attorneys' fees and costs.

## **COUNT 56**

## **VIOLATIONS OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT, Wis. Stat. §§ 100.18, *et seq*.**

234.    The Wisconsin Plaintiffs identified above, individually and on behalf of the Wisconsin Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

235.    Hill's is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

236.    The Wisconsin Plaintiffs and Wisconsin Subclass members are members of "the

public," as defined by Wis. Stat. § 100.18(1).

237.    With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Hill's to members of the public for sale, use, or distribution, Hill's made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

238.    Hill's also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

239.    Hill's representations and omissions were material because they were likely to deceive reasonable consumers.

240.    Hill's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

241.    As a direct and proximate result of Hill's deceptive acts or practices, the Wisconsin Plaintiffs and Wisconsin Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Hill's Products.

242.    Hill's had an ongoing duty to all Hill's customers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

243.    The Wisconsin Plaintiffs and Wisconsin Subclass members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs, the Class on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.


Dated: March 12, 2019                   Respectfully submitted,


                                        By: /s/Isaac Diel_____
                                        Isaac Diel KS# 14376
                                        **Sharp McQueen PA**
                                        Financial Plaza

6900 College Boulevard Suite 285
Overland Park, Kansas 66211
Tel: (913) 661-9931
Fax: (913) 6619935
idiel@sharpmcqueen.com

Gary E. Mason (pro hac to be filed)
Danielle L. Perry (pro hac to be filed)
**WHITFIELD BRYSON & MASON, LLP**
5101 Wisconsin Avenue NW, Ste. 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
**gmason@wbmllp.com**
**dperry@wbmllp.com**


**Attorneys for the Plaintiffs and Class**

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served, upon all counsel of record, electronically on the 12th day of March, 2019 via the Court's CM/ECF system.


_____/s/ Isaac Diel_____